BERNARD J. GUYNAN, APPELLANT, v. LEWIS OLSON, APPELLEE.

133 N. W. 2d 571

Filed February 26, 1965. No. 35818.

McGinley, Lane, Mueller & Shanahan, for appellant.

Maupin, Dent, Kay & Satterfield, Clinton J. Gatz, Donald E. Girard, and Rady A. Johnson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

WHITE, C. J.

Defendant driver ran into plaintiff, who was on horseback, and his herd of cattle, on a bridge spanning the South Platte River near Paxton, Nebraska, at about 6:50 a.m., mountain standard time, December 29, 1961. Plaintiff was thrown from his horse and sued for personal injuries and for property damage to the horse and the cattle that were struck. Defendant cross-petitioned for damage to his automobile. The court entered a judgment against both parties pursuant to special findings of the jury that the plaintiff was guilty of slight negligence and the defendant guilty of ordinary negligence. The plaintiff appeals.

The plaintiff's first contention is that the defendant was guilty of negligence as a matter of law, and that on

his motion, the jury should have been so instructed and the cross-petition dismissed. In determining this question, conflicts and inferences from the evidence must be resolved in favor of the defendant.

Plaintiff, with his son and several neighbors as drovers to assist him, was moving a herd of about 300 head of cattle to winter pasture. Plaintiff, who was on horseback, was riding about 2 or 3 feet ahead of the herd. The other drovers were behind and at the side. At about 6:50 a.m., they reached the bridge. The bridge was 500 feet long, its deck was 18 feet wide, and it had railings 35 inches high. It had a plank deck, a worn-oiled surface, and at the time of the accident had a heavy accumulation of frost on it. Plaintiff was on the right side of the road, was 2 or 3 feet from the west bridge railing, and was 2 or 3 feet ahead of the cattle. When he reached a point about 200 feet south on the bridge, the collision occurred.

Defendant was driving north toward the bridge and was due at work in Paxton at 7 a.m. He drove to work every morning, knew the road, and the evidence shows that he had knowledge that the bridge would have frost on it. It was a cold morning, and he had cleared frost from his windshield before starting. The conditions as to visibility are in dispute. The patrolman said that it was just at dawn. The headlights of the defendant's car were on, and on trial he testified that he could see objects at a distance of 300 to 400 feet. He testified that at this time of the day, when the light was changing, it was more diffcult to see objects than normally. He testified that he was traveling 45 to 50 miles per hour when he entered on the bridge. The defendant saw the plaintiff and his horse just as he drove onto the south end of the bridge. This was a distance of 315 feet from where the defendant's car came to rest after the accident. His brakes were in good condition, and he applied them hard. He started skidding about 56 feet later and skidded 259 feet to the place where his car stopped after

impact. He entered the bridge stradling the centerline with about half of his car on the wrong side of the road. The left skid mark at point of impact with the plaintiff's horse was 5 feet, 8 inches from the west bridge rail. The defendant tried to turn his automobile aside while skidding the 259 feet, but he could not. Defendant's testimony is that the plaintiff, who was on horseback, was 2 or 3 feet east from the west rail of the bridge. Defendant's automobile struck plaintiff's horse, which weighed more than 1,000 pounds, threw it over the bridge railing which was 35 inches high, and hurled it a total distance of about 60 feet north and west into the river. The horse was killed. The plaintiff was thrown in the air and landed about 8 feet behind where the defendant's automobile came to rest. The defendant's automobile, after impact with the plaintiff's horse, careened on, killing one cow and breaking the legs of several steers. The automobile came to rest against the dead cow, with its front over on the west side of the road. The evidence shows that there was extensive damage to the defendant's automobile, and the defendant testified that it was a total loss. Defendant had the bridge in view for about a mile from the south and the evidence as to the contour of the road shows that at no time did his line of sight drop beneath the floor of the bridge. The evidence shows that the railings of the bridge, 35 inches above the deck, must have been visible to the defendant at all times.

We believe applicable here is the general rule that it is negligence as a matter of law for a motorist to drive an automobile on a highway in such a manner that he cannot stop in time to avoid a collision with an object within the range of his vision. Roth v. Blomquist, 117 Neb. 444, 220 N. W. 572, 58 A. L. R. 1473; Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250; Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106; Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., 161 Neb. 152, 72 N. W. 2d 669; Guerin v. Forburger, 161

Neb. 824, 74 N. W. 2d 870; Dryer v. Malm, 163 Neb. 72, 77 N. W. 2d 804.

. We have generalized the exceptions by stating that they embrace all those situations where reasonable minds might differ as to whether the operator was exercising due care under the particular circumstances. Fulcher v. Ike, 142 Neb. 418, 6 N. W. 2d 610; Miers v. McMaken, 147 Neb. 133, 22 N. W. 2d 422; Robins v. Sandoz, 175 Neb. 5, 120 N. W. 2d 360. In the application of this rule, we have applied the exceptions to the situations where the object, obstruction, or depression is of the same color as the roadway, and for that reason, or for other sufficient reasons, cannot be observed by the exercise of ordinary care in time to avoid a collision. Guerin v. Forburger, *supra;* Miers v. McMaken, *supra;* Adamek v. Tilford, 125 Neb. 139, 249 N. W. 300; Haight v. Nelson, 157 Neb. 341, 59 N. W. 2d 576.

We do not believe this case comes within the exceptions. They generally embrace factual situations involving various factors which might reasonably be considered to relieve a driver of the duty to see the object or vehicle in time to avoid it. They deal with situations in which the driver did not see the object ahead of him until a very short distance before he was upon it. The question is then presented as to whether a driver in order to escape the rule was excused from not seeing the vehicle or object in the road ahead of him sooner. We feel that if the rule applies at all, at a minimum it must be applicable to the situation present in this case. The defendant, by his own admission, saw the plaintiff and his horse at the entrance to the bridge 315 feet away. This was a greater distance than an ordinary city block. His speed was such, that on applying his brakes, he could not control his vehicle, could not turn it aside, or do anything to keep it from skidding helplessly into the plaintiff and his cattle. He was on the wrong side of the road and on a frosty and slick roadway known to him to be such, and was still traveling with sufficient

speed and force at the end of his skidding to throw a 1,000 pound horse over a bridge railing, kill a cow, and break the legs of several other animals. It is argued with much force that considering the testimony of the defendant himself and the conditions of visibility he should have seen the plaintiff and his cattle much sooner than he did. We point out that no matter what the conditions of visibility were, the defendant did discover the plaintiff and his cattle over a city block away. He was unable to avoid them and he struck them on the west and wrong side of the road. Nor does frost, ice, snow, mist, or fog excuse such action. These are conditions and not intervening causes and require drivers to exercise a degree of care commensurate with the circumstances. Guerin v. Forburger, *supra;* Bramhall v. Adcock, 162 Neb. 198, 75 N. W. 2d 696; Murray v. Pearson Appliance Store, *supra;* Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825; Fischer v. Megan, 138 Neb. 420, 293 N. W. 287. In Dryer v. Malm, *supra,* plaintiff, coming over the crest of a hill, saw sheep blockading a highway 400 feet away. In Hilferty v. Mickels, 171 Neb. 246, 106 N. W. 2d 40, the distance between the automobiles was 200 feet when the necessity for stopping was known to the driver. In both cases the driver was held guilty of negligence as a matter of law. The application of these cases to the present one is self-evident.

Although it is true that the jury, by special finding, found the defendant guilty of ordinary negligence, the failure of the court to instruct that the defendant was guilty of negligence as a matter of law and to dismiss the cross-petition was prejudicial error. Cappel v. Riener, 167 Neb. 375, 93 N. W. 2d 36; Stocker v. Roach, 140 Neb. 561, 300 N. W. 627; Bezdek v. Patrick, 170 Neb. 522, 103 N. W. 2d 318.

We turn now to the question of contributory negligence. Plaintiff asserts it was prejudicial error to submit this issue to the jury. He entered and was on the bridge at all times about 2 or 3 feet ahead of his cattle. There is

evidence that he saw the defendant's automobile approaching about a mile away just as he was entering the bridge. He continued on with the cattle packed solid between the rails of the bridge. It was dawn, and the jury could have found that visibility conditions were poor. One of the plaintiff's drovers had a jeep. Plaintiff sent no herdsman or driver ahead to warn of the cattle crossing. The cattle would be on the bridge for 500 feet plus the length of the herd. The defendant raised the issue of improper warning in his pleadings. There is no statute prohibiting or regulating plaintiff's right to move his cattle on a public road. They were under control and not running at large.

As a general rule, a person in charge of animals has a right to lead or drive them along the highway, and is not negligent per se from so doing, but in doing so, he must exercise reasonable care to avoid injury from motor vehicles using the highway. Sertic v. McCullough, 155 Or. 216, 63 P. 2d 884; Tabaka v. Gerard, 12 N. J. Misc. 110, 169 A. 722; Lawson v. Fordyce, 237 Iowa 28, 21 N. W. 2d 69; 61 C. J. S., Motor Vehicles, § 467, p. 26. Nor does the act of leading animals bring the person conducting them within the rules of the road applicable to motor vehicles. Such person is bound to use reasonable care but is not bound to have or keep the animals on the right half of the highway. 3 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. Ed.), § 1622, p. 11, 1964 Cumulative Pocket Part; Sertic v. McCullough, *supra*. A person leading animals is entitled to assume that approaching motorists will use due care and obey the rules of the road. Lawson v. Fordyce, *supra;* 61 C. J. S., Motor Vehicles, § 467, p. 26.

Whether this issue should have been submitted presents an extremely close question. Our research reveals no case in which the issue of contributory negligence has not been submitted to the jury in cases involving collision with cattle being driven or herded on a highway.

The available authority seems to support the conclusion that in the situation such as we have in this case, the issue of contributory negligence should be submitted to the jury. In Anderson v. Dail, 229 Mo. App. 272, 77 S. W. 2d 169, 224 Mo. App. 403, 21 S. W. 2d 496, it was held that there was no duty on the part of a person driving cattle to maintain an advance guard to herald the approach of cattle, but in this case, occurring at night, the court held that the question of the plaintiff's contributory negligence in driving the cattle without an advance guard was a question for the jury. A recent Washington case, Green v. Biles-Coleman Lumber Co., 58 Wash. 2d 307, 362 P. 2d 593, came to the same conclusion in a five to four decision.

This case is remarkably similar to the present case. The plaintiff was driving a herd of 59 cattle on an 18-foot highway around a curve. The defendant, coming down a grade in a logging truck at an excessive rate of speed, saw the plaintiff and the herd of cattle at least 200 feet away, lost control of his truck when the brakes were applied, the truck jackknifed, and the collision occurred. The road was slick as here, and it appears that the accident happened in the daytime. Said the court: "The question here is whether we can say, as a matter of law, that the plaintiff used reasonable care to protect his cattle from injury, while exercising his right to drive them on the highways, and, hence, was not contributorily negligent. * * * The defendants, a logging-truck driver and his employer, were concededly negligent because the driver was hurtling his thirty-ton juggernaut at a speed of thirty-five miles an hour down a grade on a road that was slushy and slippery, knowing that cattle might be on the road. * * * We must, however, agree that the trial court was entitled to conclude that for the plaintiff to attempt to move fifty-nine head of cattle for a 'mile and a half or three quarters' along a curving highway, which he knew was frequently used by logging trucks, without any assistance (when another man was

available to help him), constituted contributory negligence. * * * The trial court also concluded that a warning should have been given to approaching motorists. It is conceded that the plaintiff was not legally obligated to give advance warning of the herd's approach; the question is: Would a reasonable man, under the circumstances, have sent his employee (who was driving a truck) up the road a quarter or half a mile ahead of the herd to give approaching motorists, coming down the grade, warning that the cattle were on the highway?"

The pertinency of the above authorities is apparent. We point out that it was necessary to block this bridge for a period of time in which the jury could have found that the plaintiff should have reasonably known that automobile traffic would approach and attempt to cross. The jury could have found that the visibility of the roadway was affected under the conditions present, and that he could reasonably know that the blocking of the bridge should require him, in the exercise of reasonable care, to station a herdsman or take other proper means to herald the presence and approach of the cattle and advise travelers of the blocked condition of the bridge. Considering the further circumstances of the slick condition of the bridge, which was 18 feet wide, that it would be difficult to turn aside or control a car on, we cannot say as a matter of law that the jury could not determine that the plaintiff was guilty of some negligence and that it was a contributing proximate cause of the accident.

Plaintiff argues that the presence of the cattle could not have been the proximate cause of the accident and that the sole proximate cause of the accident was defendant's negligence as a matter of law. It is true that the defendant testified that he saw the plaintiff on his horse first, and then the cattle, but he saw both in a split second period of time. They were altogether, almost as a unit, and a jury could infer that the whole blocked highway confronted the defendant at one time and motivated the action that he took under the circumstances.

We cannot say as a matter of law that there was a sufficient intervening gap of time that would require us to hold that the presence of the cattle was merely a subsequent independent condition that could not have been a proximate cause of the accident. But, even if that were so, the jury could have found, under the above authorities covering the question of contributory negligence, that the plaintiff should have warned of the trapped condition on the 500-foot bridge at a point beyond where approaching drivers ordinarily would be required to observe conditions ahead of them on the road. Considering all of the circumstances, we conclude that the question of contributory negligence was properly submitted to the jury.

Defendant contends that the plaintiff should have filed a motion for judgment notwithstanding the verdict, under section 25-1315.02, R. R. S. 1943, prior to the filing of his motion for a new trial and that on appeal he cannot now review the court's ruling on the plaintiff's motion for a directed verdict. He says that a motion for new trial alone is insufficient. We have examined this contention and it is without merit. When a motion for a directed verdict is overruled at the close of the evidence and a judgment is entered on a jury verdict, the appealing party has alternative remedies. He may, as here, file a motion for a new trial which by the terms of the statute, asks that the judgment or verdict previously entered be set aside.

For the reasons given, the judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.