JAMES A. MATSON, APPELLEE, v. JOHN D. DAWSON, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF DIANA DAWSON, A MINOR, APPELLEE, IMPLEADED WITH DIANA DAWSON, A MINOR, APPELLANT.

178 N. W. 2d 588

Filed June 26, 1970. No. 37500.

Maupin, Dent, Kay, Satterfield & Gatz, Donald E. Girard, and Gary L. Scritsmier, for appellant.

Lyons, Wood & Carroll, for appellee Matson.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and COLWELL, District Judge.

NEWTON, J.

This case involves a collision between a horse ridden by plaintiff and an automobile operated by Diana Dawson, hereinafter called defendant. Plaintiff was injured and the verdict and judgment in the trial court were in plaintiff's favor. Questions presented are whether or

not defendant was guilty of negligence which was a proximate cause of the accident and whether or not plaintiff was guilty of contributory negligence sufficient to bar recovery. We reverse the judgment of the district court and dismiss the case.

The following facts are undisputed. The accident occurred on B Street in McCook, Nebraska, at approximately 6:30 p.m., central standard time, on December 23, 1967. B Street is also the route of U. S. Highways Nos. 6 and 34 and runs in an east-west direction. It is a four lane paved highway with a narrow median separating the east and west bound lanes. At the scene of the accident, there is a private road running into a motel on the north side of the street and a short break in the median to facilitate ingress to and egress from the motel. Plaintiff had ridden his horse a considerable distance down B Street in an easterly direction and at a point about 3 blocks west of the motel moved from the south side of the outside lane to the north side of the inside lane. In doing so, he crossed immediately in front of an east bound car which slowed down to 5 miles per hour. At this point the horse broke into a lope and the east bound car followed to the break in the median at the motel where plaintiff crossed into the west bound traffic lane. As plaintiff approached the median break, he signaled a left turn, a car passed and some children in the car shouted which "spooked" the horse and compelled him to hang on to the saddle horn with his free hand. Defendant was driving west at 20 to 25 miles per hour. She first saw the horse as it was about at the median and starting across into the west bound lanes. Plaintiff had seen the car approaching when it was 100 to 200 feet away. Plaintiff in describing what occurred after his horse was spooked, said: "He jumped and I got to goin' down that way, and *about that time I looked up and there was another car comin'*—oh, it's, I couldn't see what color of car it was. I was in this here (indicating) darn near in that turn there (indicat-

ing). I was out in—already startin' to make that turn, *then all at once I got hit."* (Emphasis supplied.) It was plaintiff's intention to cross to the north side of B Street and continue east on the highway shoulder. The accident occurred at a point a short distance east of the motel driveway and the defendant's car stopped just to the east of the driveway. Contact with the car was made, as evidenced by a dent, at a point just above the left rear wheel. The horse spun around and fell, with plaintiff still in the saddle, adjacent to the north curb.

There is some dispute as to the degree of darkness. Plaintiff says when he first saw defendant's car it was in the north or outside west bound traffic lane, but the second time he saw it, it was in the inside lane and that the accident occurred in the inside lane. Defendant's evidence is that the car was in the outside lane at all times. Both agree it veered slightly to the right just before the collision. Defendant maintains the horse crossed to the west bound lanes at a gallop. Plaintiff testified the horse was in a fast walk and under control at all times, but the driver of the car that followed plaintiff east on the highway was called as a witness by plaintiff and testified the horse was still in a lope when it crossed the median.

Are the facts sufficient to sustain the verdict for plaintiff? There is no evidence that defendant's brakes were applied prior to the collision or that the car skidded when it veered slightly to the right. In the absence of a skid, it is apparent that the rear wheels necessarily followed the front ones. The front end of the car did not strike the horse and it is evident that the only manner in which contact could be made with the left rear portion of the car was for the horse to run into the automobile. Plaintiff had been paralleling the median just to the south and traveling east. His attention was diverted from approaching traffic by the actions of the horse at the time he turned left through the median and when he looked up, it was too late to avoid the collision.

Defendant did not see the horse in the east bound lane until it was crossing the median at a comparatively rapid pace. She was proceeding in a west bound lane which was free of traffic and could not be legally charged with the necessity of observing plaintiff in the east bound lane until he began a left turn. The area was not an intersection where a left turn might be anticipated and although plaintiff says he gave a hand and arm signal for a left-hand turn prior to reaching the end of the median, he concedes that when the horse acted up, he seized the saddle horn and ceased to signal.

An intersection is the area embraced within the lateral curb lines or, if none, then the lateral boundary lines of two or more highways, which join one another at an angle. See § 39-741, R. R. S. 1943. There was not a junction of two or more highways at the scene of this accident, but only a private road branching off the highway. Plaintiff was making a left-hand turn between intersections on a heavily traveled thoroughfare. Visibility was somewhat impaired by darkness, although there were street lights in the area, and plaintiff was aboard an unlighted means of conveyance.

A horse-drawn carriage, a horseback rider, a cyclist, or a pedestrian are equally entitled to the use of the highways with motor vehicles. See, Tyler v. Hoover, 92 Neb. 221, 138 N. W. 128; Johnson v. Anoka-Butte Lumber Co., 141 Neb. 851, 5 N. W. 2d 114.

The statutes of this state setting out the rules of the road appear to be limited in effect to vehicular traffic and inapplicable to horseback riders. Such riders are nevertheless bound by common law rules. See Guynan v. Olson, 178 Neb. 335, 133 N. W. 2d 571; Tyler v. Hoover, *supra*. All travelers upon the highways, regardless of their means of travel, must use reasonable care for their own safety and the safety of others. A left-hand turn across a highway between intersections, particularly under the circumstances existing here, is fraught with danger and a party making such a turn is required to

exercise a degree of care commensurate with the danger. See Petersen v. Schneider, 153 Neb. 815, 46 N. W. 2d 355. "The giving of the statutory signal for a left turn under such circumstances will not absolve the driver from negligence where he fails to exercise care for his own safety, and that of others, by looking to the front and rear for the approach of other vehicles using the highway." Petersen v. Schneider, *supra*. The same rule is applicable to a pedestrian crossing a. street between intersections. One who attempts to cross a street between intersections without looking for approaching traffic is guilty of such negligence as will bar a recovery as a matter of law. See, Ficke v. Gibson, 153 Neb. 478, 45 N. W. 2d 436; Palmer v. McDonald, 171 Neb. 727, 107 N. W. 2d 655. Of similar import is the rule that when one in a place of safety sees or could have seen the approach of a moving vehicle in close proximity and suddenly moves from the place of safety into the path of such vehicle and is struck, his own conduct constitutes contributory negligence of such degree as to preclude recovery. See Palmer v. McDonald, *supra*.

Prior to the accident, plaintiff was in a place of safety either in the east bound traffic lane or on the median. As he approached the break in the median, he saw the defendant's automobile approaching at a distance of 100 to 200 feet. He did not look again prior to crossing into its path but states that he started to turn and "got hit" just as he looked up. He insists that he had his horse under control at all times and if so, his actions were willful and not due to any unexpected action of the horse. The requirement "to look" means to look at a time and place when to look would be effective. See Petersen v. Schneider, *supra*. We can only conclude that plaintiff's own negligence was sufficient to bar recovery.

Furthermore, we are unable to find negligence on the part of defendant. The highway ahead of her was clear and she was proceeding at a reasonable rate of speed.

She did not strike plaintiff's horse, but on the contrary, the horse ran into the side of her automobile. In any event, she was not required to anticipate that plaintiff, who was proceeding in the opposite direction, would attempt to cross the street as she approached. A person has no duty to anticipate negligence on the part of others, and, in the absence of notice or knowledge to the contrary, is entitled to assume, and to act on the assumption, that others will exercise ordinary care. Good v. Jones, 184 Neb. 454, 168 N. W. 2d 520. By the time it became apparent to defendant that a crossing was being undertaken by plaintiff, her efforts to avoid the horse had become unavailing. "* * * if a motorist is, in other respects, driving with due care and a horse turns suddenly into the path of the motor vehicle so quickly that the motorist cannot avoid striking it, he is absolved from negligence as a matter of law." 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 392, p. 942. See, also, Mortenson v. Hindahl, 247 Minn. 356, 77 N. W. 2d 185.

The judgment of the district court is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.