WILLIAM McCLELLEN, APPELLANT AND CROSS-APPELLEE, V. ALBERT DOBBERSTEIN, JR., ET AL., APPELLEES AND CROSS-APPELLANTS.

204 N. W. 2d 559

Filed February 23, 1973. No. 38435.

Tye, Worlock, Tye, Jacobsen & Orr, for appellant.

Knapp, Tarrell, State & Yeagley, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

The appeal here is by the plaintiff from a $25,000 personal injury judgment resulting from a rear-end motor vehicle collision on Avenue M just outside Kearney, Nebraska. The gist of the plaintiff's appeal is the contention that there was error in several instructions and that he was entitled to a directed verdict on the issue of liability. The defendants have cross-appealed contending that the plaintiff was guilty of contributory negligence as a matter of law and that the action should be dismissed. We affirm the judgment of the district court and dismiss the cross-appeal.

Only the facts necessary for a disposition of this appeal will be set out in this opinion. The defendant Moreno, an employee of Dobberstein, abandoned a garbage truck owned by Dobberstein in the right side of the roadway of Avenue M because it was out of gas, placed no warning devices around it, and notified no one of its presence. It remained there until sometime during the evening. Between 10 minutes of 12 o'clock midnight and 1 a.m. two Kearney police officers in a cruiser stopped to investigate the truck. The unlighted truck was parked facing north on the east side of the roadway. The cruiser was parked on the west side of the street approximately two car lengths north of the front of the northbound truck. The southbound cruiser lights were on low beam and there was ample room

for vehicular traffic to pass between the truck and the cruiser from either direction. The officers finished checking the truck and at that time saw the plaintiff's car coming over the south end of a bridge about 1,800 feet or 6 city blocks south of the location of the truck. One of the officers testified that, recognizing the danger, he took a two-cell flashlight, equipped with a red tone and ran down the road, swinging the flashlight horizontally so both a red and a white light showed, for the purpose of stopping the plaintiff. He reached a point about a block south of the parked truck in the plaintiff's lane of travel. He estimated the speed of the plaintiff's car at 50 to 55 miles per hour; that there was no decrease in speed of the plaintiff's car from the time it crossed the bridge; and that the car never varied in its path until the impact. The plaintiff admitted seeing lights on the road to the north when he came over the bridge. He did not know whether they were on bright beam but testified that they blinded him. He never saw the officer or the flashlight or heard any verbal warning. He never reduced his speed, never saw the parked truck, and looked to the right side of the road to avoid looking at the bright lights. He realized the car with the bright lights was stationary when he was about 4 blocks from it.

The trial court submitted the issues of negligence and contributory negligence to the jury. The jury resolved these issues in favor of the plaintiff. The difficulty of the plaintiff's position arises from this fact. The plaintiff assigns as error and argues error in instructions Nos. 2, 3, 6, and 16, all relating to the issues of liability. Neither in the plaintiff's assignments of error nor in his argument in his brief does he assert or argue the insufficiency or inadequacy of the jury verdict on damages, nor assert nor argue that the verdict is not supported by the evidence. The plaintiff recovered a substantial verdict in the sum of $25,000. The matter of the insufficiency or inadequacy of the verdict is not

before us for judicial review and cannot be considered. It is elementary that consideration of a cause on appeal is limited to errors assigned and discussed. Revised Rules of the Supreme Court, 1971, Rule 8a 2(3); § 25-1919, R. R. S. 1943; United States Nat. Bank v. Feenan, 182 Neb. 524, 156 N. W. 2d 29. It is further apparent, in light of the amount of the recovery in this case in the sum of $25,000, together with the failure of plaintiff to assert in any fashion by assignment of error or argument in his brief any inadequacy of the verdict, that our consideration of the case does not come within the exception of a plain error appearing in the record. Points not covered by any assignment of error will not be considered by this court. Cook v. Lowe, 180 Neb. 39, 141 N. W. 2d 430. It is not the duty of a reviewing court to search the record for the purpose of ascertaining if there is prejudicial error; every reasonable presumption will be indulged in favor of the correctness of the judgment that is entered; and any ruling alleged to be prejudicially erroneous must be specifically pointed out. Kasparek v. May, 182 Neb. 582, 156 N. W. 2d 144. These rules follow and are consistent with the fundamental law that a judgment will not be reversed unless prejudicial error affirmatively appears from the record. It is incumbent upon the party appealing from the judgment to show prejudicial error to entitle it to reversal. Workman v. Workman, 174 Neb. 471, 118 N. W. 2d 764; Blair v. Klein, 176 Neb. 245, 125 N. W. 2d 669. The plaintiff contends that he is entitled to a directed verdict on the issue of liability. Again this contention must fail since, having prevailed, he does not assign or assert any error in the amount of the verdict. We have recently held that any alleged errors in instructions occurring in the course of a trial are irrelevant, if the jury arrived at a verdict consistent with a directed verdict that should have been granted. Van Ornum v. Moran, 186 Neb. 418, 183 N. W. 2d 759.

Plaintiff alleges and assigns error in the admission of exhibit 57, being a map or diagram of the accident area. Again it is clear, under the authorities already set out in this opinion, that such error, if present, could not possibly be prejudicial to the plaintiff, inasmuch as the jury resolved the question of liability in the plaintiff's favor.

The plaintiff assigns as error the failure of the trial court to give his requested instruction No. 11, which, in effect, directed the jury that it was proper for it to take into consideration the low purchasing power of the dollar. There are two answers to this assignment of error. In the first place, as we have pointed out, error is not assigned with reference to the amount of the verdict, nor is it asserted in argument that the verdict of the jury in the sum of $25,000 is in any way inadequate. It is true that the jury can consider such a factor in arriving at the amount of the verdict but this court has specifically held that it is not a proper subject for an instruction. Segebart v. Gregory, 160 Neb. 64, 69 N. W. 2d 315. There is no merit to this contention.

A much more serious question is presented by the defendants' cross-appeal. The defendants contend, in substance, that the plaintiff does not come within the exceptions to the range of vision rule, and was guilty of contributory negligence as a matter of law, barring recovery, in failing to see and avoid collision with the parked garbage truck. They rely upon the basic statement of the rule in Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106, in which we said that the driver of an automobile is legally obligated to keep such a lookout that he can see what is plainly visible before him and he cannot relieve himself of that duty. In conjunction therewith, he must so drive his automobile that when he sees the object he can stop in time to avoid it. The defendants argue that the court, in the application of this rule, must disregard the plaintiff's testimony as to

the fact that his vision was blinded momentarily by the lights of the police cruiser. It is true that this court has said many times the existence and presence of smoke, snow, fog, mist, blinding headlights, or other similar elements which materially impair or destroy visibility are not to be deemed intervening causes, but rather as conditions which impose upon the drivers of automobiles the duty to assure the safety of the public by the exercise of care commensurate with such surrounding conditions. Nichols v. Havlat, 140 Neb. 723, 1 N. W. 2d 829. See, also, Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701.

We are of the opinion that the facts in this case bring it within the exceptions to the rule and that the trial court properly determined the issues were submissible to the jury. We have stated that an exception applies to situations where the object, obstruction, or depression is of the same color as the roadway, and for that reason, or for other sufficient reasons, cannot be observed by the exercise of ordinary care in time to avoid a collision. Guerin v. Forburger, 161 Neb. 824, 74 N. W. 2d 870; Guynan v. Olson, 178 Neb. 335, 133 N. W. 2d 571; Adamek v. Tilford, 125 Neb. 139, 249 N. W. 300; Haight v. Nelson, 157 Neb. 341, 59 N. W. 2d 576. We have consistently held that where an object on the highway in front of one driving thereon at night is so nearly the color of the road that it may be difficult to distinguish until quite close, it cannot be said, as a matter of law, that such person was guilty of contributory negligence. Giles v. Welsh, 122 Neb. 164, 239 N. W. 813; Monasmith v. Cosden Oil Co., 124 Neb. 327, 246 N. W. 623.

The factual argument of the defendants as to the plaintiff's negligence is very persuasive on the merits. But the only question that is presented to us, under well-recognized rules as to a directed verdict, is whether there are sufficient conflicts or inferences under the evidence in the case to warrant a jury to find for the

plaintiff under the comparative negligence rule. As we have stated (see Guynan v. Olson, *supra*) the cases in which a court is warranted to submit a rear-end collision situation to the jury generally embraces facts and situations involving factors which might reasonably be considered to relieve a driver of the duty to see the object or vehicle in time to avoid it. More precisely, the question is usually presented as to whether a driver, in order to escape the rule of stopping within the range of vision of a discernible object, is excused for not seeing the vehicle or object in the road ahead of him sooner than he actually did and was unable to escape the collision. The evidence is undisputed that the unlighted parked truck, in the middle of the plaintiff's roadway, was covered with tar, gravel, and dirt, and that the box of the truck was dark green in color. The roadway was unlighted. It is also undisputed that the defendant Moreno abandoned the truck in the roadway and he did not place any flares, flags, flashers, or other warning devices on the road to warn oncoming travelers of the presence of his abandoned truck. These facts would seem to bring the case clearly within the exceptions announced in the rules we have recited and particularly to the factual situations present in Monasmith v. Cosden Oil Co., *supra,* and Giles v. Welsh, *supra.* In essence, the defendants seek to escape the application of the exceptions to the rule by arguing quite forcefully that the lights of the police cruiser and the activity of the officers in attempting to stop the plaintiff bring the case back within the application of the rule. We feel that the questions of the relative location of the police cruiser, the degree of brightness or dimness of its lights, the question of the plaintiff's conduct when facing this quite unusual situation, and the credibility of his testimony to the effect that he did not see the officer's flashlight or hear the verbal warning properly present questions for the jury under all the circumstances. It is true that the plaintiff did not decrease his

speed, did not see the parked truck until he was immediately upon it, that he did see the headlights of the police officer's cruiser, at least 1,700 feet prior to the time of the collision. We point out that this is not simply a question of blinding lights as being an excuse for not being able to see a vehicle ahead in your lane of traffic on the highway. We have held many times that it is not. But what we do hold is that the combination of circumstances presenting the judgment problem to the plaintiff of where the stationary police cruiser car was, its relation to the parked truck which alone by itself would have presented a jury question, his speed, and the credibility of his testimony as to his failure to heed the warnings of the police officer presents a combination of circumstances from which a jury was entitled to form a judgment as to whether he was contributorily negligent. The trial court properly submitted the issue of contributory negligence to the jury.

We come to the conclusion that the assignments of error are without merit and that the verdict of the jury and the judgment of the trial court should be affirmed. The judgment of the trial court is therefore affirmed and the cross-appeal of the defendant dismissed.

AFFIRMED AND CROSS-APPEAL DISMISSED.

NEWTON, J., dissenting.

Plaintiff was injured in an automobile accident occurring on a graveled road on the outskirts of Kearney, Nebraska. The defendant Moreno was operating a truck which ran out of gas early in the evening and which was permitted to stand on the highway, without flares, until the accident occurred several hours later. That defendants were negligent is apparent. The only question is whether or not the plaintiff was guilty of contributory negligence, barring his right to recover as a matter of law. I find that he was and consequently disagree with the majority opinion.

The undisputed evidence reflects that two police officers observed the parked truck in the northbound

traffic lane and parked their patrol car with lights on low beam two or three car lengths north of the truck but in the southbound lane. The lights of the patrol car illuminated the truck. Plaintiff approached from the south. His approach was observed by the officers. One of the officers, in full uniform, ran down the road toward plaintiff waving a flashlight. The distance he covered is somewhat problematical but it is clear that he was in the area lighted not only by the lights of the patrol car but also by those of the plaintiff's automobile. Plaintiff was traveling at a speed variously estimated at from 40 to 55 miles per hour. He struck the rear of the truck and drove it ahead two car lengths. He states he failed to see the officer with the flashlight and failed to hear the officer yell as he was passed although plaintiff's window was partially open. Plaintiff did not slow down. Plaintiff further states that when still 2 or 3 blocks away he ascertained that the patrol car with its headlights on was not moving. A parked car, after dark, ordinarily dictates a cautious approach as it may indicate an accident, a highway blockage, or people on the highway. Plaintiff denies that he was blinded by the lights of the patrol car and states: "Q So you could see what was in front of you, is that correct?

A They was bright lights, yes.

Q And they were impairing your vision, were they not?

A If I had looked to the front, yes.

Q Didn't you look at them to see that they were bright, Mr. McClellen?

A Yes, and then I looked to the side rather than stare them down.

Q You are not trying to tell this jury that you drove six blocks looking down at a gravel ridge, are you?

A I looked to the road, to the front of me, to the bank where my dim lights were showing the road and the bank ahead of me, yes.

Q   Your lights shone in the road the direction your car was headed, didn't they?

A   Yes, to the front and side.   * * *

Q   And you could see the glare ahead of you and it obscured your vision of the road, did it not?

A   It obscured the vision of the road on — if I had looked into the beam of the light, but not to the front of me and to the side, no.

Q   The beam was coming right down the road, wasn't it, sir?

A   Not to the direction I was looking, no.

Q   The direction you were looking was to the right side?

A   To the right and forward, side of the road, yes."

It is apparent that plaintiff was also negligent. He failed to decrease speed and approach the parked patrol car with any degree of caution. He either failed to see or ignored the police officer in plain view in the roadway with the flashlight and also ignored the warning shout. By his own statements he makes it clear that he was not watching the road ahead but was looking to the side and he failed to see the truck which was at least partially illuminated by the lights of the patrol car.

This court has frequently held that:   "As a general rule it is negligence as a matter of law for a motorist to drive an automobile on a highway in such a manner that he cannot stop in time to avoid a collision with an object within the range of his vision."   O'Conner v. Kientz, 184 Neb. 554, 168 N. W. 2d 703.

In the present case we are not dependent upon the "range of vision rule."   "The driver of a motor vehicle has a duty to keep a proper lookout and watch where he is driving even though he is driving on the side of the highway where he has a lawful right to be. He must keep a lookout ahead or in the direction of travel or in the direction from which others may be expected to approach and to know what is in front of him for a

reasonable distance." Willey v. Parriott, 179 Neb. 828, 140 N. W. 2d 652.

Here the plaintiff concedes that he was not watching the road ahead of him. As a result he failed to see the officer attempting to warn him of danger, failed to see the parked truck, and crashed into it with little if any diminution of speed. Certainly, one who completely fails to watch where he is driving is much more guilty of negligence as a matter of law than one who simply drives at a speed that prevents his stopping in time to avoid an object within his range of vision.

BOSLAUGH, J., joins in this dissent.

CLINTON, J., concurring.

I believe the dissent of Newton, J., requires a response.

Where reasonable minds may differ as to whether certain conduct may be characterized as violating the reasonable man standard and therefore be determined to be negligent, a jury question is presented. This is such a case. The dissent does not fairly describe the evidence on the issue of contributory negligence nor the possible inferences which the jury would be entitled to draw from it. Four points need to be noted.

(1) The dissent assumes the parked truck was illuminated by the headlights of the police car. There was evidence from which the jury could conclude otherwise. The plaintiff testified the parked car was immediately to his left just before the collision. This would mean the police car was a little to the south of the truck. The police officers testified the car was about two car lengths north of the truck.

(2) The jury could have properly concluded that the police officer did not give any effective warning by his presence and waving the flashlight which the plaintiff could have seen in time to avoid the collision. The speed of the plaintiff's car was variously estimated at 40 to 55 miles per hour. One officer testified that when he saw the plaintiff's oncoming car he ran south toward it and was 1 block south of the truck when the

plaintiff's car passed him. He also testified that at the time of the impact he was within two to two and a half car lengths of the truck. He therefore must have run back toward the scene at a speed which approached at least 35 miles per hour. The jury was not required to believe this and consequently doubt is created as to what the officer did.

The other officer stated he was just to the left of the truck immediately before the impact and apparently was not aware the collision was about to occur until just a "split second" before the collision when he became aware of the "glare" of the lights of the oncoming car. He took two or three steps away from the truck. There was an immediate exchange of conversation between him and his fellow officer. It was as follows: "Well, I immediately — I heard — I heard my co-officer ask — Robert Taylor ask if we needed the unit. I hollered, I asked him if we needed the unit. There was an exchange of conversation. He wanted to know if I was all right and so I went immediately to the cruiser without ever going to the McClellen car and I called the emergency unit. I took Officer Taylor's word that we needed a unit and then I went to the car."

The plaintiff testified: "As I approached the headlights, after I had went through the headlights of the car parked there, it was immediately to my left, the car, as I looked out the window to the left, I seen somebody standing beside the car and that is the last I remember." This testimony would tend to support the conclusion not only that the officer was not where he said he was, but also that the police car was south of the truck and illuminated it not at all.

The jury could have concluded that the testimony of the officer to the warning signals he gave was not accurate. It may very well have given consideration to the fact that the officer, who admittedly overlooked (although both officers had been at the scene long enough to make a rather thorough inspection of the

truck) the simple expedient of turning on the flasher with which the police car was equipped and which expedient might possibly be regarded as a standard procedure, might very well not have been alert enough to have given the flashlight signals exactly as claimed.

(3) The description of the truck, its color, its load, its lack of lights, the background, the effect of the admittedly bright lights (even on low beam) of the police car on the vision of the plaintiff, clearly brings this case within the exceptions to the assured clear distance ahead doctrine.

(4) The dissent interprets the plaintiff's testimony as compelling a finding as a matter of law that he did not look at all and failed to see what was in plain sight. The dissent quotes only a small portion of the testimony on the point. The entire testimony including that quoted would support a conclusion that if the plaintiff looked directly at the headlights of the police car they were bright enough to be blinding and that for that reason he focused his gaze right and forward to the full extent that his low beam light reached. This is not a total failure to maintain a lookout. It is probably a practice followed by most drivers passing oncoming cars with especially bright lights.

A jury question was presented.

SPENCER, J., joins in this concurrence.