DORIS D. MAYS, APPELLANT, V. DANA M. SIEKMAN ET AL., APPELLEES.

247 N. W. 2d 613

Filed November 17, 1976. No. 40523.

William A. Wieland of Healey, Healey, Brown & Wieland, for appellant.

David A. Johnson of Emil F. Sodoro Law Office, for appellee Siekman.

Barlow, Johnson, DeMars & Flodman, for appellee Hall.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

NEWTON, J.

This is a damage action by plaintiff, a horseback rider, to recover for personal injuries and the loss of the horse as the result of being struck by defendant Dana M. Siekman's automobile. Plaintiff's action against defendant Siekman and another defendant, Edward E. Hall, was dismissed. The court directed a verdict against plaintiff as to liability on defendant Siekman's counterclaim for damage to his automobile and the jury assessed his damages at $1,154. We affirm the judgment of the District Court.

The accident occurred on the evening of October 16, 1972, on the north approach to a viaduct over railroad tracks. The viaduct is on a north-south graveled road located 2 miles east of the intersection of North 84th Street and Havelock Avenue in Lincoln, Nebraska. Evidence regarding the time of the accident and the degree of darkness is conflicting. It is evident however that the two automobiles involved in the accident had lights on and that the glow of the lights could be observed by anyone approaching the viaduct from the opposite direction. This indicates an advanced degree of darkness.

The plaintiff, with others, left her home on horseback, rode west under the viaduct and north adjacent to it, then into some fields. Plaintiff returned alone and chose to ride over, rather than around, the viaduct. She was riding a dark-colored horse and wore dark clothing. The north approach to the viaduct had guardrails extending north from the northeast corner of the concrete bridge a distance of 335 feet and within that area the guardrails prevented the horse from leaving the 24-foot wide roadway. The defendant Hall approached the graveled road on an intersecting road about 125 feet north of the guardrails, turned south, and

then noticed the horse and rider going south and cutting over to the east side of the road. He also noticed the glow from lights on a car approaching from the south side of the viaduct; and he moved over to the right within a foot of the guardrail and slowed to a virtual stop. The defendant Siekman was driving the northbound car at 40 to 45 miles per hour and on approaching the viaduct observed the glow of the lights on defendant Hall's automobile, slowed down some, and on crossing the concrete bridge, he saw the horse and rider next to the guardrail on his side of the road. The speed limit on that road was 50 miles per hour. Defendant Siekman tried to stop but slid on the gravel. He was going 20 to 25 miles per hour when he struck the horse in the right hind leg. The Hall automobile occupied about 7 feet from the west guardrail leaving a distance of 17 feet for passage of the horse and the Siekman automobile. Being unable to stop, Siekman attempted to drive between the horse and the Hall car, but the undisputed evidence shows that at the last instant the horse shied and its rear quarters entered the path of the Siekman automobile resulting in the accident.

At the time of this accident, although no longer true, statutory traffic rules had not been made applicable to horseback riders, but such riders were bound by common law rules of negligence and must have exercised reasonable care to avoid injury from motor vehicles using the highway. See Guynan v. Olson, 178 Neb. 335, 133 N. W. 2d 571. That plaintiff was negligent is apparent. She rode on to the viaduct approach on a road with a 50 mile per hour speed limit knowing that it was at least partially dark; that cars might approach from either direction; that the guardrails would prevent her riding off the road; and that both her clothes and the horse were dark colored, and without a reflector or lights. Also, she could have ridden around and under the viaduct as she had done earlier in the evening. She was an experienced horsewoman and knew that horses

sometimes become frightened and shy. She could not have been surprised that the horse shied when facing the lights of an oncoming vehicle.

The plaintiff's husband testified he had previously cautioned people not to ride over the viaduct but had not so cautioned his wife who was an experienced horsewoman. He knew crossing the viaduct to be dangerous. When he rode over the viaduct he made sure he had time to get across before encountering any problems such as traffic. He would go across rapidly as he would not "want to be caught on there with anyone." If he were caught, he would turn around and go back. If caught, he would probably dismount. He had been riding horses all his life and was in the business of breeding and training horses.

Although the defendant Siekman was not proceeding in an unusual or dangerous manner, it would appear that he was in violation of the rule that one is negligent who drives so fast that he cannot stop within the range of his vision. See Bartosh v. Schlautman, 181 Neb. 130, 147 N. W. 2d 492. In this instance his failure to observe plaintiff and to stop in time may have presented a jury question due to the darkness, the dark color of the horse and rider's clothing, and a dark background.

It is evident that had the horse not shied, the defendant Siekman would have had ample room to pass between the horse and the defendant Hall's automobile. Any negligence on Siekman's part was not the proximate cause of the accident. That cause was the shying of the horse as he attempted to pass. Had Siekman had full control of his automobile and proceeded to pass through the wide opening left between the Hall automobile and the horse, as he might reasonably have done, the accident would still have occurred. " '* * * if a motorist is, in other respects, driving with due care and a horse turns suddenly into the path of the motor vehicle so quickly that the motorist cannot avoid striking it, he is absolved from negligence as a matter of law.' "

Matson v. Dawson, 185 Neb. 686, 178 N. W. 2d 588.

"However, in meeting and passing a horseback rider, or a horse-drawn vehicle, a motorist is ordinarily under no obligation to stop or to take special steps to avoid a collision therewith, unless the horse shows signs of fright or that its rider or driver has lost control of it." 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 392, p. 942.

"Although the question of proximate cause is ordinarily for the determination of the jury, where, upon the evidence produced, only one inference can be drawn, it is for the court to decide whether a given act or series of acts is the proximate cause of the injury." Starlin v. Burlington Northern, Inc., 193 Neb. 619, 228 N. W. 2d 597. See, also, Ecker v. Union P. R. R. Co., 164 Neb. 744, 83 N. W. 2d 551.

In the case of defendant Hall we are unable to perceive any negligence whatever on his part We conclude that the District Court was correct in dismissing plaintiff's petition as to both defendants.

Regarding the defendant Siekman's recovery on his counterclaim, it would appear that substantially the same situation is presented. Although plaintiff doubtless could not control her horse when it commenced to act up, its actions were such as one familiar with horses might reasonably be expected to anticipate under the circumstances and she knew that she was likely to meet motor vehicles coming from the south on the road. The horse shying and the resultant accident followed in a natural and continuous sequence upon plaintiff's negligence. We cannot say that her conduct was not a substantial factor in bringing about the accident and consequently conclude that the judgment on the counterclaim should be sustained.

The judgment of the District Court is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

The District Court not only dismissed plaintiff's cause

of action, it also directed a verdict against the plaintiff as to liability on defendant Siekman's counterclaim for damages to his automobile, and the jury assessed his damages at $1,154. This court has now affirmed that judgment. For all practical purposes, this court has held that it is negligence as a matter of law to ride a horse at dusk on a highway bounded by guardrails, even though the horse is well-trained, not fractious, and is fully accustomed to vehicular traffic. Such a holding is wholly unsupported under the facts here and is in direct conflict with Guynan v. Olson, 178 Neb. 335, 133 N. W. 2d 571. The holding in this case will no doubt come as a rude surprise to many a cowboy, real or rhinestone.

There were ample issues which should have gone to the jury on both causes of action. There was serious factual conflict as to the extent of the dusk or darkness. There was the clear issue of the failure of the defendant Siekman to stop within the range of his vision. Any assessment of comparative negligence between the plaintiff and the defendant obviously required an assessment of the factual issues. The case should have been submitted to the jury.