RONALD ZAVORAL, APPELLANT, v. PACIFIC INTERMOUNTAIN EXPRESS, A CORPORATION, ET AL., APPELLEES.

132 N. W. 2d 329

Filed January 15, 1965. No. 35775.

Van Steenberg, Myers & Burke, for appellant.

Holtorf, Hansen, Fitzke & Kortum and Torgeson, Hurlbut & Knapp, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, SPENCER, and BOSLAUGH, JJ., and POLLOCK and SIDNER, District Judges.

WHITE, C. J.

Defendants' loaded 58,000 pound tractor-trailer combination, 49 feet 11 inches long, going west on U. S. Highway No. 30, about 12:30 a.m., on February 18, 1961, was in collision with plaintiff's southbound 1960 Oldsmobile. The collision occurred in the northwest quadrant of the automatic signal controlled intersection of U. S. Highway No. 30 and Chestnut Street (Highway 29) in the City of Kimball, Nebraska. Both streets and the intersection were "snow packed" and icy. The weather was clear and cold. Plaintiff brings this suit for personal injuries and property damage to his automobile. From a jury verdict and judgment for the defendants, plaintiff appeals. We reverse the judgment and remand the cause for a new trial.

Plaintiff contends that the defendant driver, Tinsley Naylor, was guilty of negligence as a matter of law and that the court should have so instructed the jury. Plaintiff did not, by motion or requested instruction, raise this issue in the trial in district court. It is first raised here on appeal. Unless the question is raised by appropriate motion or otherwise, the failure of the trial court to so instruct is not an "error of law" occurring at the trial and duly excepted to as required by section 25-1142, R. R. S. 1943. Robinson v. Meyer, 165 Neb. 706, 87 N. W. 2d 231.

We feel that the issues of negligence and contributory negligence presented a jury question on the record before us. The plaintiff's version of the accident is that he was traveling south at 15 miles per hour; that the traffic light changed to green when he was about 60 feet from the intersection; that he saw the defendants'

tractor-trailer about 100 feet to the east of the intersection and traveling 35 to 40 miles per hour; that he became aware that defendant driver wasn't going to stop; and that he applied his brakes, slid on the icy pavement into the intersection, and collided with the defendants' truck. They collided at a point just ahead of the rear dual tires about 10 to 12 feet from the rear of the truck. The defendant driver's testimony is that he slowed to 30 miles per hour on the east edge of Kimball; that he continued at that speed through the intersection; that the yellow light of the automatic signal came on just as he crossed the east crosswalk entering the intersection; that the lights had changed to green about a block to a block and a half to the east; that he saw plaintiff's car when he was 40 to 50 feet east of the intersection and his light was green; and that he was in the intersection and had passed in front of plaintiff's car when it was about crossing the south line of the crosswalk into the intersection. He estimated the speed of plaintiff's car at 25 miles per hour which did not slacken. The applicable posted speed limit under the statute (section 39-7,108, R. R. S. 1943), was 30 miles per hour on U. S. Highway No. 30 and 25 miles per hour on Chestnut Street (Highway 29). This was stipulated to by the parties. The light cycle on the automatic signal facing defendant driver was 24 seconds green, 3 seconds yellow, and 33 seconds red.

It is apparent that there is a direct conflict in the testimony which the jury must resolve. According to the plaintiff, the defendant driver ran a red light at an unlawful speed. According to the defendant driver, his speed was lawful and he would have cleared the intersection before the light was green for the plaintiff, and the jury could have found that the lights were changing as each entered and that each was then going too fast under the conditions then existing. A green light is a permission to proceed carefully and not an absolute right-of-way. Styskal v. Brickey, 158 Neb. 208, 62 N. W.

2d 854. The testimony as to speed and failure to reduce it under the conditions existing, in violation of the statute (section 39-7,108, R. R. S. 1943), does not show negligence as a matter of law but is evidence of negligence for the jury to consider under all of the circumstances. The questions of proper lookout and control were also for the jury. There is no statute or ordinance governing the duty of drivers to anticipate a change in lights when approaching an automatic signal. His actions and conduct in this respect are for the jury. The question is whether he exercised that degree of control and kept a lookout that a reasonably prudent person would under all of the circumstances.

The plaintiff contends that the trial court failed to submit the issue of the unlawful speed of defendant driver in violation of the statutory limit. The plaintiff pleaded, and there was evidence to support the allegation, that the defendant driver Naylor was driving in excess of the posted speed limit of 30 miles per hour on U. S. Highway No. 30 at the time and place of the accident. The trial court, in instruction No. 4, submitted for the jury's determination whether the defendant driver was negligent "in negligently driving at an unreasonable rate of speed." The court submitted the case to the jury for special findings. The first special finding limited the jury's consideration of speed to the above quoted material element as stated in instruction No. 4. The court did not submit the issue of negligence in driving in excess of the applicable posted statutory limit of 30 miles per hour. The same situation was presented to this court in Ripp v. Riesland, 170 Neb. 631, 104 N. W. 2d 246. Therein we said (at page 653), as follows: "The instruction of the trial court as to what appellants alleged as to the speed of the automobile of the deceased was that he operated his vehicle on a highway 'at a greater speed than was reasonable and proper under the conditions existing towards the east of the intersection * * *.' This was too restricted, general, and an unfair

representation of the allegations of the speed of the automobile of deceased. It was plainly alleged in the answer that the speed of the automobile of deceased was in excess of 65 miles per hour and there is evidence supporting that allegation. It is the duty of the trial court without a request to instruct the jury as to each issue presented by the pleadings and supported by evidence. A litigant is entitled to have the jury charged as to his theory of the case as shown by pleading and evidence and a failure in this respect is prejudicial error. McKain v. Platte Valley Public Power & Irr. Dist., 151 Neb. 497, 37 N. W. 2d 923; Maska v. Stoll, supra; Southwell v. De-Boer, 163 Neb. 646, 80 N. W. 2d 877; Phillips v. State, 167 Neb. 541, 93 N. W. 2d 635; Wischmann v. Raikes, 168 Neb. 728, 97 N. W. 2d 551." The court should have submitted the issue of speed in excess of the statutory limit and its failure to do so was prejudicial error.

Plaintiff also alleged that defendant driver Naylor failed to reduce his speed when approaching and crossing an intersection and that his speed was unreasonable considering the hazardous condition of the highway. There was evidence to support this allegation. The evidence also establishes that the intersection and the approaches to it were slick and icy. The statute (section 39-7,108, R. R. S. 1943) commands, among other things, that speed shall be decreased when approaching and crossing an intersection or when special hazards exist with respect to traffic or by reason of weather or highway conditions. The court failed to submit this material issue, pleaded and supported by the evidence, and the failure to do so was prejudicial error.

There is considerable argument in the briefs as to the duty of motorists with reference to the appearance of the yellow or amber light on the automatic signal. In this case, the yellow light was on for three seconds following the green during which time the light was red for cross traffic. Defendant driver Naylor testified he was at the crosswalk when the light changed from green to

yellow. He therefore entered the intersection on the yellow according to his own testimony. The trial court, in instruction No. 11, comprehensively instructed as to the duties of drivers approaching and crossing such signal controlled intersections. We have examined this instruction and it is in harmony with the rules announced as to such instructions in Styskal v. Brickey, *supra;* and Laurinat v. Giery, 157 Neb. 681, 61 N. W. 2d 251. However, these cases did not announce a rule applicable to the situation confronting a driver approaching and entering an intersection on a yellow light. There is no state statute or city ordinance applicable. The trial court, in a portion of instruction No. 11, told the jury as follows: "The yellow light is a signal indicating that the light is about to change to red. When the light changes from green to yellow an approaching driver should stop before entering the intersection unless such driver is so close to the intersection when the light changes to yellow, that he cannot safely come to a stop, and unless he reasonably believes that he can complete his crossing the intersection before the green light appears for the intersecting drivers."

Both parties assert error in this instruction, the defendants asserting that it favored plaintiff's theory of the case and therefore could not be error. Cases are cited from other jurisdictions and arising under different statutes and ordinances. There is a diversity of opinion in these authorities. See, 2 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. Ed.), § 1040, pp. 366, 367, notes 94b and 95, and cases cited in supplemental annotation. The question is whether a motorist facing a yellow light is required to stop and when is he permitted to carefully proceed across the intersection? It is clear that if the light changes to amber or yellow after he has entered the intersection he may proceed to cross and has the right-of-way over vehicles not already lawfully in the intersection. The purpose of the yellow light is to permit the clearance of vehicles from the in-

tersection so that cross traffic may proceed. At all times drivers have no absolute right to cross but must keep their vehicles under reasonable control and maintain a proper lookout as a reasonably prudent person would under all of the circumstances. We deem the following applicable from White v. Cothran, 260 N. C. 510, 133 S. E. 2d 132: "The meaning and force to be given to electrically operated traffic control signals, in the absence of a statute or ordinance, 'is that meaning which a reasonably prudent operator of an automobile should and would understand and apply. Coach Co. v. Fultz, 246 N. C. 523. Traffic signals of the kind here described are in such general use that it is, we think, well known by motor vehicle operators that a red traffic light is a warning that the highway is closed in order to permit those using the intersecting highway safe passage through the intersection. Hence, prudence dictates that he should stop. *The meaning of the amber light is likewise recognized. It cautions but not in the positive tones of the red light. It warns that red is about to appear, and that it is hazardous to enter. It affords those who have entered on the green light the opportunity to proceed through the intersection before the crossing traffic is invited to enter.'* " (Emphasis supplied.)

After examining the authorities we come to the conclusion, in the absence of applicable legislative enactment, that upon display of a yellow light following the green on an automatic traffic signal, vehicular traffic should stop before the crosswalk on the near side of the intersection unless such stop cannot be made safely, in which event the vehicle may be driven carefully through the intersection as a prudent person would do. See Landess v. Mahler, 295 Ill. App. 498, 15 N. E. 2d 13.

Plaintiff contends that the jury should have been instructed concerning the duty of the defendant driver to anticipate that the lights might change. We feel that the court properly instructed the jury in this respect when, in instruction No. 11, it told the jury that the

effect of a green light is to grant permission to drivers to proceed lawfully and carefully. Styskal v. Brickey, *supra;* Laurinat v. Giery, *supra.* The "go" signal at an intersection grants no absolute right to proceed to a motorist, but he must maintain a proper lookout and have his car under such control as a reasonably prudent person would under all of the circumstances of the case. The questions of whether he should have anticipated a change in lights, his duty to reduce speed in approaching and crossing the intersection, and the duty to maintain a proper lookout for traffic approaching, entering, or in the intersection, all are for the jury under all of the circumstances and evidence in the case. 2 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. Ed.), § 1040, p. 367; Styskal v. Brickey, *supra;* Laurinat v. Giery, *supra;* Rose v. Campitello, 114 Conn. 637, 159 A. 887; Landess v. Mahler, *supra;* Plunkett v. Heath, 1 N. Y. S. 2d 778. See cases cited under notes 95 and 96, 2 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. Ed.), § 1040, p. 367.

Plaintiff contends the court should have defined the word "safely." This is a commonly used and understood word and we do not think a further definition was necessary in light of the other instructions given. Johnson v. Griepenstroh, 150 Neb. 126, 33 N. W. 2d 549.

Plaintiff, citing authority, contends that the court should have informed the jury that it was the defendant driver's duty to stop on the appearance of the yellow light unless such stopping would have caused him to be struck from behind. We feel that the adoption of such an arbitrary rule would be an invasion of the jury's province. This court may not declare in advance all of the situations in which a driver would be reasonably justified in coming to the conclusion that he could not stop safely. This question is for the jury in applying the controlling rules as to control, lookout, and all of the circumstances of the case.

The judgment of the district court is reversed and

the cause remanded for proceedings in conformity with the opinion herein.

REVERSED AND REMANDED.