MOLLIE A. KEHM, APPELLEE, V. EUGENE DUMPERT, REAL, FULL, AND TRUE NAME UNKNOWN, APPELLANT, REVIVED IN NAME OF WALTER A. DUMPERT, ADMINISTRATOR OF THE ESTATE OF EUGENE DUMPERT, DECEASED, APPELLANT.

162 N. W. 2d 520

Filed November 15, 1968. No. 36916.

Kier, Cobb, Luedtke, Swartz & Wieland, for appellant.

Johnston, Grossman & Johnston, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

This is a personal injury action. On trial to a jury, a verdict was returned for the defendant. A motion for new trial was subsequently filed which was sustained by the court.

Plaintiff Mollie A. Kehm had attended a dance on the night of October 2, 1965, with one Emil Krupicka. On leaving the dance, which was held at the Legion Club in Exeter, Nebraska, the couple went to a restaurant and on finding it closed, they drove west on U. S. Highway No. 6 to a filling station and restaurant. Finding that this was also closed, they drove on past for a ways, then decided to turn around and go home. Emil Krupicka was driving an automobile owned by him. According to his testimony, he stopped at a country lane just across some railroad tracks. He said he pulled off onto the shoulder of the road intending to wait until traffic had cleared before turning, that his right-hand signal lights were on, but he did not actually enter the lane. Defendant testified he approached the Krupicka car from the rear, his lights were turned down and he did not observe the Krupicka car until he was within about 50 feet of it. He conceded that at least one of the Krupicka tail lights was on, but is not certain whether the other was or not. He denied that any signal lights were operating on the Krupicka car at the time. He stated he slowed down to about 25 miles per hour but could not stop in time to avoid striking the car. Another car was

approaching from the west; the Krupicka car was on the blacktop pavement about 2½ feet from the edge of the pavement and defendant passed on the right-hand side with the left wheels of his car on the pavement and the right wheels on the shoulder of the road. He said that as he passed the Krupicka car, it turned somewhat to the right toward the lane, with the result that the left-rear end of defendant's car struck the extreme right-front fender and the corner of the bumper on the Krupicka car. Damage done to the Krupicka car was very slight, consisting of a small indentation in the bumper and three or four very shallow gouges in the extreme front end of the fender. Defendant drove on to an intersection, turned around, and came back at which time he stated the Krupicka car was in the lane facing north. This is denied by Krupicka. Some conversation then occurred. Krupicka stated that he asked the plaintiff if she was injured and that she replied in the negative. On the following day plaintiff said she became ill and consulted her doctor. She contended that she sustained a whiplash injury and an aggravation of a previous arthritic condition in her spine. Her doctor verified the nature of her injuries, attributed them to the accident, and stated that she was permanently partially disabled. Plaintiff stated that prior to the accident she had been in good health, but admitted that a few months after this accident, she was in another accident in which she sustained injuries similar to the ones she contended she received in the accident presently being considered.

Defendant had the plaintiff examined by Dr. Harold R. Horn, an orthopedic surgeon, a few days before trial. At that time Dr. Horn could find no abnormalities and testified that she was not suffering from any disability. Dr. Horn further stated that plaintiff had consulted him in 1961 about trouble she was having with her back and side at which time she stated that she had had such trouble for a period of many years; that the backache radiated around to her lower chest and anterior ab-

domen; and that she had fallen more of late. In December 1960, she had tripped on a dance floor, during the following January, she fell down a flight of basement steps, had fallen on the ice, and also fell on getting up in the morning. Plaintiff denied that she had ever seen or consulted Dr. Horn although he gave the address which had been given to him by her in 1961 and produced X-rays taken of her at that time.

Plaintiff seeks to sustain the granting of a new trial on several grounds. She stated that the trial court erroneously failed to sustain challenges for cause to certain jurors. The record does not disclose the proceedings had in regard to the picking of a jury or that plaintiff exhausted all of her peremptory challenges. In this respect, it was determined in Brumback v. German Nat. Bank of Beatrice, 46 Neb. 540, 65 N. W. 198, that: "It is the settled law of this state that error cannot be predicated upon the overruling of a challenge to a juror for cause, when the record does not disclose that the complaining party has exhausted all his peremptory challenges." Plaintiff further stated that the granting of the motion for new trial should be sustained because she was surprised by the evidence of Dr. Horn regarding her previously consulting him in 1961. No motion for a continuance on this ground was made by the plaintiff, but she elected to permit the case to go to the jury. She cannot now complain. In Remington Typewriter Co. v. Simpson, 83 Neb. 848, 120 N. W. 428, this court held: "A party will not be entitled to a new trial for surprise occasioned by his adversary's evidence when he could have procured all available evidence to refute it by procuring a short continuance of the trial, but fails to ask for such continuance." In Jensen v. John Hancock Mutual Life Ins. Co., 145 Neb. 409, 16 N. W. 2d 847, it was held: "A motion for a new trial on the ground of surprise is properly overruled where a request for a continuance for that reason was not made at the trial." In Countryman v. Ronspies, 180 Neb. 76, 141

N. W. 2d 425, it is said: "A party may not proceed with trial without objection and speculate on the outcome of the jury's verdict and, if unfavorable, obtain a reversal on a ground upon which he might have but did not move for a mistrial at the time."

Plaintiff also contended that the verdict of the jury is not sustained by the evidence. In this connection it appears, by the defendant's own testimony, that he failed to drive at such a speed and to maintain such a lookout as would have enabled him to stop in time to avoid the car in which plaintiff was riding as a guest passenger. This court has repeatedly stated that it is negligence as a matter of law for a motorist to drive so fast on the highway at night that he cannot stop in time to avoid collision with an object within the area lighted by his headlights. See, Robins v. Sandoz, 177 Neb. 894, 131 N. W. 2d 648; Bartosh v. Schlautman, 181 Neb. 130, 147 N. W. 2d 492. Defendant failed to give any excuse or reason for his failure to see the Krupicka car in time to stop and did not contend that the facts of this case bring it within the exceptions to the foregoing rule. It must, therefore, be concluded that although plaintiff did not move for a directed verdict on the question of liability, the evidence is such that a verdict for the defendant on the question of liability cannot be sustained. In this regard, it may be well to point out that in submitting the issue of negligence to the jury, the trial court did not commit error. In the absence of a motion for a directed verdict on the issue of liability, the plaintiff cannot complain of the failure of the trial court to withdraw that issue from the jury. See, Robinson v. Meyer, 165 Neb. 706, 87 N. W. 2d 231; Zavoral v. Pacific Intermountain Express, 178 Neb. 161, 132 N. W. 2d 329.

The final question presented is whether or not the verdict of the jury can be justified by reason of a failure to satisfy the jury on the question of damages. As heretofore noted, the plaintiff and her doctor testified to injuries and disabilities which they claimed plaintiff

had sustained in the accident. In rebuttal, defendant relied upon plaintiff's denial of any injury directly after the accident occurred and upon the testimony of Dr. Horn stemming from his examination of plaintiff immediately prior to trial and 6 years prior thereto in 1961. This evidence is directly contradictory of plaintiffs regarding the state of her health prior to the accident, indicates that she was, as early as 1961 and for many years prior thereto, suffering from back troubles, and in view of her denial of ever having consulted Dr. Horn may have seriously impeached her testimony.

Where it is a question of setting aside a verdict, the evidence should be considered in the light most favorable to the party obtaining the verdict. See, Robison v. Troy Laundry, 105 Neb. 267, 180 N. W. 43; Thompsen v. Miller, 177 Neb. 530, 129 N. W. 2d 498. In jury cases, jurors are the sole judges of the credibility of witnesses and of the weight to be given their testimony. They have the right to credit or reject the whole or any part of the testimony of any witness in the exercise of their judgment. If there is any evidence to support a jury's verdict, it is not the court's function to weigh the evidence to determine whether it would have returned a different verdict. When the evidence is in conflict and is such that reasonable minds can draw different conclusions from it, a jury question is presented. See Chaloupka v. State, 176 Neb. 746, 127 N. W. 2d 291. It was further held in that case that: "In testing the sufficiency of the evidence to support a judgment, the evidence must be considered in the light most favorable to the successful party. * * * Every controverted fact must be resolved in favor of the successful party and he should have the benefit of every inference that can reasonably be deduced from the evidence."

Under such circumstances, it appears that the jury may well have rendered a verdict for the defendant on the question of damages, and that defendant is entitled to retain the benefit of that verdict. The judgment of

the district court is reversed and the cause is remanded.

REVERSED AND REMANDED.

McCOWN, J., concurring in result.

I disagree with the repronouncement of a flat and rigid rule that it is negligence, as a matter of law, for a motorist to drive so fast on the highway at night that he cannot stop in time to avoid collision with an object within the area lighted by his headlights. The rule was never intended as an automatic rule of thumb nor a rigid formula to be applied regardless of circumstances. It is already subject to so many exceptions that it is often difficult to tell where the rule ends and the exceptions begin.

Where the exceptions embrace (as they do) those situations where reasonable minds might differ as to whether the motorist was exercising due care under the particular circumstances, it is difficult to justify the retention of the old "general rule." See, Guynan v. Olson, 178 Neb. 335, 133 N. W. 2d 571; Bartosh v. Schlautman, 181 Neb. 130, 147 N. W. 2d 492.

All sorts of conflicts are apparent in retention of the rule. For example, a motorist driving on the interstate highway at night with low-beam headlights at anything close to the 75-mile per hour speed limit, would be guilty of negligence as a matter of law; while if he is charged with negligence in exceeding the 75-mile speed limit, the jury is simply instructed that violation of the speed limit is not, in and of itself, negligence, but may be evidence of negligence.

It seems obvious that the general rule in its old form no longer fits present circumstances of traffic and highway regulations.

SPENCER, J., joins in this concurrence.