RUTH D. McCAULEY, APPELLANT, V. JOHN BRIGGS, DOING BUSINESS AS BRIGGS BROKERAGE, AND MIKE H. WEYER, APPELLEES.

355 N.W.2d 508

Filed October 5, 1984.   No. 83-570.

Wagoner & Wagoner, for appellant.

Denzel R. Busick of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

Plaintiff, Ruth D. McCauley, brought this action for personal injuries and damages resulting from a collision between a motor vehicle in which she was a passenger and a tractor-trailer rig being driven by defendant Mike H. Weyer while within the scope of his employment with defendant John

Briggs, doing business as Briggs Brokerage. After jury trial the jury returned a verdict in favor of defendants. Plaintiff appeals from the trial court's denial of her motion for new trial, assigning error in the following respects: (1) That the trial court refused to sustain plaintiff's motion for a directed verdict on the issue of liability; (2) That the trial court failed to instruct the jury concerning the status of plaintiff as a passenger; and (3) That the trial court failed to instruct the jury that any negligence of the driver of the car in which plaintiff was a passenger could not be imputed to plaintiff. For the reasons hereinafter set out we affirm.

At the time of the accident on February 10, 1977 (a clear, dry day), plaintiff was a passenger in an automobile jointly owned by plaintiff and her husband and being driven by her husband, Robert McCauley. The McCauleys were traveling west on Interstate 80, and at approximately 6:40 p.m. were at a point just west of the Seward interchange in Seward County, Nebraska. They were returning to their home in Grand Island, Nebraska, after a day's shopping in Lincoln. At this point Interstate 80 is a divided four-lane highway, with two lanes westbound and two eastbound. Mr. McCauley was proceeding in the north or driving lane at about 55 miles per hour when he reached the crest of a hill and became aware of flashing red lights about one-quarter of a mile ahead of him and coming toward him. From the crest to the bottom of this hill was approximately four-tenths of a mile. Mr. McCauley testified that "when I saw the flashing red lights, I looked in my side mirror and I saw no vehicles behind me, I put on my turn signals and moved over to the passing lane then I immediately let up on my foot feed so I could slow the vehicle down." The driver then testified that he had traveled in the passing lane for about an eighth of a mile when the car was struck in the rear by defendants' rig.

The origin of the red lights coming toward Mr. McCauley was explained by a state highway patrolman. Earlier on the day of the accident, a semitrailer going east on the Interstate had blown its left front tire and had gone out of control across the median, across the westbound lanes, and into the ditch north of the westbound lanes. The semitrailer rolled over and spilled its

cargo. Another semitrailer came to the scene, and the spilled cargo was reloaded, over a period of several hours, into the second semitrailer. The reloading was done while the second semitrailer was parked on the north shoulder, facing east. When the reloading was completed, the highway patrolman, in his patrol car with the overhead red lights flashing, started to lead the loaded semitrailer east on the north shoulder. The patrolman proceeded in front of the semitrailer "to warn oncoming traffic that there was something unusual that would be coming to be facing traffic on the shoulder of the roadway." The plan was to proceed to the "next rock-crossover on the interstate" and get the eastbound semitrailer from the westbound lanes into its proper eastbound lanes so that it could finish its trip to the east.

The patrol vehicle and the semitrailer went east on the north shoulder up a grade, and as the patrol car was near the crest of the hill the patrolman became aware of the accident which is the subject of this case. The highway patrolman testified the McCauley-Weyer accident occurred about two-tenths of a mile to the west of the patrolman as he neared the crest of the hill while proceeding from the west.

Defendant Weyer testified that he was driving defendant Briggs' tractor-trailer rig, weighing approximately 72,000 pounds, west on the Interstate and that he was first informed of the possibility of a traffic problem when a driver going east on the Interstate told him over his CB radio that there was an accident further down the road beyond, or west of, the Seward interchange. At this time Weyer was east of that interchange. When he heard the CB message telling him to "get in the left lane," Weyer testified he moved from the north or driving lane to the south or passing lane of westbound Interstate 80, and slowed down a little bit. He then approached the crest of the hill, and as he got to the top of the hill he could see the highway patrol car going east on the north shoulder with a semitrailer rig behind him, also going east.

At approximately the same time, Weyer testified, there was a station wagon, which later turned out to be the McCauley vehicle, just ahead of him in the north or driving lane. Weyer testified that as he approached the McCauley station wagon

from the rear, he could not recall if the station wagon's taillights or driving lights were on but that the station wagon pulled over in front of Weyer when the red lights of the patrol car became visible as the station wagon and the Weyer rig passed the top of the hill. Weyer further testified that the McCauley vehicle's brake lights did not come on ·but that the McCauley vehicle slowed as if the driver had taken his foot off the accelerator. Before this time and since he had reached the crest of the hill, Weyer had not applied his brakes in an effort to slow down. Weyer testified that he immediately put on his tractor-trailer brakes when he saw the station wagon turn into his lane and slow down. It is undisputed that there were 84 feet of truck tire skid marks up to the apparent point of impact, and 176 feet of truck skid marks from that point of impact to the point where the two vehicles, still hooked together by the front bumper of the tractor-trailer rig and the rear of the station wagon, came to rest.

The general rule in Nebraska is that it is negligence as a matter of law for a motorist to drive a motor vehicle on the highway in such a manner that he is unable to stop in time to avoid a collision with an object within the range of his vision. *Duling v. Berryman*, 193 Neb. 409, 227 N.W.2d 584 (1975); *Maurer v. Harper*, 207 Neb. 655, 300 N.W.2d 191 (1981).

There are, of course, exceptions to the general rule, but the applicability of the rule, as a matter of law, depends on the individual circumstances and is for the court's initial determination. *Bartosh v. Schlautman*, 181 Neb. 130, 147 N.W.2d 492 (1966). In *Bartosh, supra* at 133, 147 N.W.2d at 495, we said:

> The so-called general rule is a rule of law which, from its inception in Roth v. Blomquist, 117 Neb. 444, 220 N.W. 572, 58 A.L.R. 1473, has been stated as being subject to many exceptions. The exceptions are discussed and referred to in Robins v. Sandoz, 177 Neb. 894, 131 N.W.2d 648, and in Guynan v. Olson, supra. To say the least, it is difficult to determine the exact extent to which the exceptions have undercut the general rule, but we have consistently announced our adherence to it. The general rule is not an automatic rule of thumb nor a rigid formula

to be applied regardless of circumstances. The applicability of the rule, as a matter of law, depends on the individual circumstances and is for the court's determination.

In this case the trial court initially properly determined that the fact that Weyer drove into the rear of the McCauley vehicle did not require a finding that Weyer was guilty of negligence as a matter of law because a factual question was presented by the evidence. That factual question arose because the evidence sharply conflicted as to whether Robert McCauley, without looking to the rear and without signaling his intention to change lanes (as required by applicable Nebraska statutes), turned so quickly in front of Weyer's rig that Weyer could not avoid the collision, or whether Robert McCauley, when he saw the oncoming lights, looked to the rear, put on his turn signal, changed lanes safely, and proceeded one-eighth of a mile before being struck in the rear. We held in *Maurer v. Harper, supra* at 657, 300 N.W.2d at 193, quoting from *Duling v. Berryman, supra*:

> It is not "the duty or the function or the power of the District Court to decide between the directly contrasting factual theories of this accident. . . . Where the testimony is conflicting as to whether the range of vision rule is applicable or whether another factual version of how the accident occurred is supported by the evidence, then it becomes the duty of the court to submit both factual issues to the jury."

If the jury determined the facts to be as defendant Weyer claimed, that Robert McCauley, without looking and without giving any signal, had changed lanes so closely in front of Weyer that Weyer could not avoid hitting him, the general rule would not apply. The defendant Weyer was not negligent as a matter of law, and the trial court was correct in refusing to direct a verdict for plaintiff.

Plaintiff's remaining assignments of error are concerned with the instructions given by the court. Plaintiff alleges that the court failed to instruct the jury on plaintiff's status as a passenger and "as to the non-imputation of negligence of the driver to the Plaintiff-passenger." Brief for Appellant at 3. It

has long been established that it is the duty of the trial court, without any request to do so, to instruct the jury on the issues presented by the pleadings and supported by the evidence. *Zavoral v. Pacific Intermountain Express*, 178 Neb. 161, 132 N.W.2d 329 (1965); *High-Plains Cooperative Assn. v. Stevens*, 204 Neb. 664, 284 N.W.2d 846 (1979).

In applying that principle we have established that the failure to object to instructions after they have been submitted to counsel for review or to offer more specific instructions if counsel feels the court-tendered instructions are not sufficiently specific will preclude raising an objection on appeal, unless there is a plain error indicative of a probable miscarriage of justice. *Fisher v. Gate City Steel Corp.*, 190 Neb. 699, 211 N.W.2d 914 (1973); *Keating v. Klemish*, 214 Neb. 458, 334 N.W.2d 440 (1983).

In this case plaintiff did not tender any proposed instructions, did not orally request any further instructions, nor did the plaintiff object to any of the proposed instructions, insofar as to issues presented on this appeal, at the time of the instruction conference held by the court before the instructions were read to the jury. Plaintiff did object specifically to subparagraph (c) of instruction No. 9, with regard to certain statutory duties of drivers, but the ruling on this objection is not a subject of this appeal.

Plaintiff states in her brief at 19 that "[u]nder the circumstances, it is submitted that the Court should have submitted to the jury Nebraska Jury Instruction No. 7.53." That instruction is concerned with "Automobile Guest Statute—Contributory Negligence." Suffice it to say that in this case no defense of contributory negligence was pleaded by defendants, nor did they adduce any evidence on that issue. The trial court is not required to instruct on an issue as to which there has been neither pleading nor proof. *Fisher v. Gate City Steel Corp., supra.*

The trial court specifically instructed the jury:

Before the plaintiff can recover against the defendants on her petition in this action, the burden is upon the plaintiff to prove . . . 1. That the defendant Mike Weyer was negligent in one or more of the particulars claimed

against him . . . . 2. That such negligence, if any . . . was the proximate cause or a proximately-contributing cause of the accident.

The instruction submitted and the factual situation presented insofar as it concerns the negligence of a third person (in this case, plaintiff's husband) are remarkably similar to *Fisher v. Gate City Steel Corp., supra*, where we stated at 701-02, 211 N.W.2d at 916-17:

To require the jury to be instructed that no negligence of a third party could be imputed to the plaintiff would require instructions on an issue which was not presented by the pleadings or evidence. It would have been a negative instruction on a nonexistent issue.

It is inferentially argued that some more specific or elaborate instruction should have been given as to the effect of negligence on the part of both Peter Kiewit Sons' Co. and the defendant. The answer is simply that the plaintiff requested no such specific instruction. " 'Instructions must be considered and construed together, and if they are not sufficiently specific in some respects, it is the duty of counsel to offer requests for instructions that will supply the omission, and, unless this is done, the judgment will not ordinarily be reversed for such defects.' " McKinney v. County of Cass, 180 Neb. 685, 144 N.W.2d 416.

The instruction on the liability of the defendant to the plaintiff on the theory of negligence presented the issue to the jury and correctly reflected the law on the issue. Where instructions correctly state the law, it is not error for the court, in the absence of a request for a more specific instruction, to fail to give a more elaborate one. Younker v. Peter Kiewit Sons Co., 180 Neb. 835, 146 N.W.2d 202.

We do not hold that the instruction referred to on appeal as to the nonimputation of Robert McCauley's negligence, if any, to plaintiff could not properly have been given, but only that it is an elaboration on the basic instructions required to be given by the court and, as such, need not be given by the court unless requested to do so. If requested, the trial court, in its discretion, would then determine if the proposed instructions should be

given. The trial court, in its instructions, properly presented all issues to the jury, and there is no error in that regard.

The judgment of the trial court was correct in all respects and is affirmed.

AFFIRMED.

GRANT, J., dissenting.

I respectfully dissent. I fully agree with the court's decision as to the instruction question presented, but I believe the trial court should have directed a verdict in favor of plaintiff at the conclusion of all the evidence, leaving only the question of damages to be determined by the jury.

In my view, the dispositive fact was admitted by defendant Weyer when he testified that while *east* of the Seward interchange, he was informed by CB radio of a traffic problem *west* of the interchange. Upon being informed of this problem and in response to the direct suggestion of his unknown CB adviser, Weyer prudently moved his 72,000-pound tractor-trailer rig from the driving lane to the passing lane. He testified that at that time he slowed up slightly but that as he reached the crest of the hill—at the bottom of which he knew a problem existed—he was traveling 45 or 50 miles per hour and was overtaking a station wagon which apparently was going to remain in the lane in which Weyer knew a traffic problem might exist. Weyer testified that as he passed the crest of the hill, he did not decrease his speed until he reacted to the McCauley car (which did not apply its brakes) coming into his lane, at which time Weyer was traveling approximately 55 miles per hour. After his reaction time Weyer applied his brakes and left 84 feet of skid marks before striking the rear of the McCauley vehicle. After this contact Weyer's rig remained connected to the McCauley car and the rig left another 176 feet of skid marks. When it is realized that the McCauley car was going the same direction and approximately the same speed as the rig, and the McCauley car had not braked before the collision, although Robert McCauley had removed his foot from the accelerator, the conclusion is inescapable that Weyer's rig was not under control and that the resulting collision was, at least in part, the proximate result of Weyer's negligence.

Unless we attribute to Weyer the disposition intentionally to

funnel the station wagon directly into the trouble ahead, Weyer's conduct can be classified as nothing except negligence as a matter of law. Weyer did not have his rig under the control necessary to permit the driver of the station wagon to take the steps which he would have to take to avoid the apparent danger, which danger was known to Weyer and not known to the driver of the McCauley station wagon. The accident that occurred was clearly foreseeable by Weyer. Weyer was aware of possible traffic problems over the crest of the hill he was approaching, and he himself had moved his vehicle to an appropriate safer spot—the passing lane. Weyer could certainly foresee that other drivers in the normal driving lane would shift to the left or passing lane if, as they topped the hill, there was an apparent danger presented to them in their driving lane. Nevertheless, Weyer approached the McCauley station wagon so closely that when the station wagon made the move that Weyer could foresee, Weyer could not control his truck and collided with the rear of the McCauley vehicle.

The action of Robert McCauley in moving to the passing lane in the apparent circumstances confronting him was foreseeable by Weyer, and when Weyer conducted himself so as to deny McCauley room to make that maneuver safely, Weyer was guilty of negligence as a matter of law. As set out in Restatement (Second) of Torts § 302 at 82 (1965), "A negligent act or omission may be one which involves an unreasonable risk of harm to another through . . . the foreseeable action of . . . a third person." Further, as stated in *McClelland v. Interstate Transit Lines*, 142 Neb. 439, 445, 6 N.W.2d 384, 389 (1942), " 'It suffices to charge a person with liability for a negligent act if some injury to another ought reasonably to have been foreseen as the probable result thereof by the ordinarily intelligent and prudent person under the same circumstances . . . .' "

The action of Weyer in this case in driving his rig into the McCauley vehicle from the rear was negligent as a matter of law, and a verdict should have been directed in favor of the plaintiff passenger. I would reverse and remand for a new trial on the issue of the amount of damages proximately resulting from defendants' negligence.