STATE OF NEBRASKA, APPELLEE, V. JAMES E. MYERS, APPELLANT.
603 N.W.2d 378

Filed December 10, 1999. No. S-98-856.

Alan G. Stoler and Jerry M. Hug for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

James E. Myers was charged by amended information with first degree murder (count I), use of a deadly weapon in the commission of a felony (count II), possession of a deadly weapon by a felon (count III), and, for sentencing purposes, being a habitual criminal (count IV). A jury returned guilty verdicts on counts I, II, and III, and the district court determined that Myers should be sentenced as a habitual criminal. Myers was sentenced to life imprisonment on count I, 18 years' imprisonment on count II, and 10 years' imprisonment on count III. The present appeal followed.

## SCOPE OF REVIEW

■ A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Cuny*, 257 Neb. 168, 595 N.W.2d 899 (1999).

■ In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by such rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Sanchez*, 257 Neb. 291, 597 N.W.2d 361 (1999).

■ A trial court's determination of the adequacy of the State's "neutral explanation" of its peremptory challenges will not be reversed on appeal unless clearly erroneous. *State v. Lopez*, 249 Neb. 634, 544 N.W.2d 845 (1996).

■ In a jury trial of a criminal case, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Sanchez, supra.*

## FACTS

In September 1995, law enforcement officials began investigating the murder of Lynette Mainelli. On April 19, 1996, the Douglas County Attorney filed an application with the Douglas County District Court for an order authorizing interception of wire communications involving telephone numbers listed to Myers' mother, Annie Henley.

The affidavit attached to the application for the wiretap stated that the Douglas County Attorney had probable cause to believe that Myers and others had knowingly and willingly engaged in murder and the distribution of narcotics and that Myers and others were conspiring with each other regarding these crimes. The affidavit stated that a narcotics operation of any size will utilize the telephone, whether it be for contacting sources and distributors or for discussing such things as cost, quality, and payments. In addition, persons involved in a murder often use the telephone to assist in the destruction of evidence, construction of alibis, and intimidation of potential witnesses, as well as for purposes of contacting others involved in the murder.

The objective of intercepting the wire communications was to record conversations revealing details of Mainelli's murder so as to ascertain the identity of individuals involved in the murder and to record conversations revealing details of suspected narcotics trafficking. Such information would be used by police to assess the nature and scope of the continuing conspiracy regarding the murder and drug trafficking; to discover the location of physical evidence; to track the manner in which moneys derived from the illegal narcotics transactions were utilized, concealed, laundered, or otherwise disposed of; and to locate the sources of the illegal narcotics.

The affidavit also stated that normal investigative procedures had been tried and failed or reasonably appeared to be unlikely to succeed if tried and that there was probable cause to believe that the telephone numbers listed to Henley were being used by Myers and others. The district court found the affidavit to be sufficient, and the police were then allowed to place a wiretap (wiretap 1) on the telephones at Henley's residence.

On May 3, 1996, the Douglas County Attorney applied for an order authorizing the interception of wire communications involving a telephone number listed to Myers' girl friend, Tara Lynam. The affidavit for this wiretap (wiretap 2) was based on information obtained from wiretap 1, and as a result of the information gained from both wiretaps, the State obtained search warrants and arrested Myers.

Myers filed a pretrial motion to suppress evidence derived from the wiretaps and to suppress the warrants obtained as a result of the wiretaps on the grounds that his rights under the 4th, 5th, 6th, and 14th Amendments to the U.S. Constitution; article I, § 7, of the Nebraska Constitution; Neb. Rev. Stat. §§ 86-701 to 86-712 (Reissue 1994 & Supp. 1995); and Neb. Rev. Stat. § 29-822 (Reissue 1995) were violated. Myers also moved in limine to keep out evidence and testimony related to gangs, previous felony convictions, and communications intercepted via a wiretap, including conversations between Henley and Myers' sister, Sheila Myers.

The pretrial motions were denied by the district court. The district court found that the State had satisfied the four requirements set forth in § 86-703, that the Nebraska Attorney General's approval of the wiretaps satisfied the statutory requirements, that the State had established probable cause, and that the amendments to the original interception order did not affect Myers.

After the jury was sworn, Myers made a motion under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), claiming that three African-American jurors had been stricken because of their race. While the motion was not timely, the State waived the timeliness issue with the district court's approval. The State advanced its reasons for striking the three jurors, and the case proceeded to trial.

The jury found Myers guilty of counts I, II, and III, and the district court found Myers to be a habitual criminal. Myers was sentenced to life imprisonment for the murder, a term of 18 years' imprisonment for use of a deadly weapon in the commission of a felony, and a term of 10 years' imprisonment for possession of a deadly weapon by a felon. This timely appeal follows.

## ASSIGNMENTS OF ERROR

Myers claims that (1) the district court erred in failing to suppress evidence derived from unlawful wiretaps; (2) the affidavit supporting the application for wiretap 2 failed to demonstrate probable cause for belief that Myers had committed, was committing, or was about to commit a crime, and the order authorizing wiretap 2 was unlawfully issued because wiretap 1 was tainted; (3) the district court committed error in determining that the State had valid race-neutral explanations for its peremptory challenges to three African-American jurors; (4) the district court erred in overruling Myers' motion in limine and allowing the State to play tape-recorded conversations to the jury, as the conversations were hearsay and irrelevant and their probative value was outweighed by their prejudicial effect; (5) the district court erred in allowing testimony regarding a meeting involving Myers at a Council Bluffs, Iowa, hotel, as it was hearsay and irrelevant and its probative value was outweighed by its prejudicial effect; (6) there was insufficient evidence to support the convictions for first degree murder, use of a weapon in the commission of a felony, and possession of a weapon by a felon; and (7) the district court erred in submitting jury instruction No. 6 to the jury, as step instructions in murder cases are violative of the 6th, 8th, and 14th Amendments to the U.S. Constitution; article I, §§ 3 and 11, of the Nebraska Constitution; and *Beck v. Alabama*, 447 U.S. 625, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980).

## ANALYSIS

### WIRETAPS

Myers claims that the district court erred in failing to suppress evidence derived from two unlawful wiretaps. We have fully evaluated the placement of these wiretaps and the accompanying pretrial motions in *State v. Myers, ante* p. 272, 603 N.W.2d 390 (1999). We concluded that the search warrants authorizing placement of the wiretaps were valid and that the district court was not clearly wrong in overruling Myers' pretrial motions to exclude evidence obtained as a result of these wiretaps. *Id.*

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory

stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Cuny*, 257 Neb. 168, 595 N.W.2d 899 (1999). We find this assignment of error is without merit.

### PEREMPTORY CHALLENGES TO AFRICAN-AMERICAN JURORS

Myers argues that the State's peremptory challenges to three African-American members of the jury pool were racially motivated. Relying upon *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), Myers challenged the removal of these jurors, but did not do so until after the jury had been sworn.

In *State v. Covarrubias*, 244 Neb. 366, 507 N.W.2d 248 (1993), *questioned on other grounds, State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995), we held that an attack on the use of peremptory challenges on *Batson* grounds must be made prior to the jury's being sworn. We reasoned that in Neb. Rev. Stat. § 25-1601.03(4) (Reissue 1995), the Legislature provided that one of the purposes of chapter 25, article 16, is to ensure that no citizen is excluded from jury duty because of discrimination based upon race, color, religion, sex, national origin, or economic status. Neb. Rev. Stat. § 25-1637(1) (Reissue 1995) provides that a motion for relief based on the ground of substantial failure to comply with chapter 25, article 16, must be made before the jury is sworn to try the case. Thus, we concluded that a defendant's objection to the use of peremptory strikes on *Batson* grounds should also be made prior to the swearing in of the jury or before any objections are waived.

Here, Myers did not raise his claim that the State had stricken jurors in a racially motivated manner until after the jury had been sworn. At the hearing on this motion, the State acknowledged that the motion was untimely, but counsel stated: "However . . . I also believe that we simply create yet another appellate issue by my challenging his ability to raise a Batson issue. And for that reason, I will waive any objection to the

Batson challenges being raised out of time, and I am prepared to defend my challenges." Although the State waived the error of raising the *Batson* challenge out of time, we must consider whether the State is empowered to make such a waiver.

In *People v. Banks*, 243 Ill. App. 3d 525, 611 N.E.2d 1270, 183 Ill. Dec. 622 (1993), the state argued that the defendant had waived his *Batson* claim for the purpose of appeal because he did not object before the jury was sworn. The court noted that while it is true that a defendant's failure to object to a prosecutor's use of peremptory challenges before the jury is sworn results in a waiver of that claim, the doctrine of waiver applies to the state as well as to the defendant. In that case, the defendant raised the *Batson* challenge out of time, but the state argued the merits of the claim without objecting to the challenge's timeliness. The court found the state had waived the argument of procedural bar. See, also, *People v. Harris*, 129 Ill. 2d 123, 544 N.E.2d 357, 135 Ill. Dec. 861 (1989).

Likewise, we conclude that the State waived any objection to the timeliness of this *Batson* challenge. See, *Carter v. Hopkins*, 151 F.3d 872 (8th Cir. 1998) (noting that state had waived defense of procedural default to *Batson* challenge); *People v. Wiley*, 156 Ill. 2d 464, 622 N.E.2d 766, 190 Ill. Dec. 736 (1993) (finding that state may waive timeliness of *Batson* challenge); *People v. Harris, supra* (finding that state may waive timeliness of *Batson* challenge); *People v. Lott*, 196 Ill. App. 3d 967, 554 N.E.2d 569, 143 Ill. Dec. 634 (1990) (finding that state may waive timeliness of *Batson* challenge).

In *State v. Allen*, 252 Neb. 187, 560 N.W.2d 829 (1997), we held that in order to make a prima facie case of purposeful discrimination in the selection of a jury based on the prosecutor's use of peremptory challenges, the defendant must show (1) that he or she is a member of a cognizable racial group, (2) that the prosecutor has exercised peremptory challenges to remove from the panel members of the defendant's race, and (3) that facts and other circumstances raise an inference that the prosecutor used the challenges to exclude potential jurors based on their race. After the defendant has made a prima facie showing, the burden shifts to the State to provide a race-neutral explanation for challenging the jurors. See, *Batson v. Kentucky*, 476

U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986); *State v. Lopez*, 249 Neb. 634, 544 N.W.2d 845 (1996); *State v. Rowe*, 228 Neb. 663, 423 N.W.2d 782 (1988). If a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination. *Purkett v. Elem*, 514 U.S. 765, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995).

▇ The rule, as articulated in *State v. Allen, supra*, suggests that the race of the defendant and the members of the jury who were stricken must be the same in order for a *Batson* challenge to stand. In *Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), the Court held that common racial identity between a defendant and an excluded venireperson is not a prerequisite for a challenge under *Batson* and that such a requirement would contravene the Equal Protection Clause of the U.S. Constitution. See, also, *State v. Rodriguez*, 6 Neb. App. 67, 569 N.W.2d 686 (1997). We also hold that the race of the venireperson and the defendant need not be the same in order to sustain a *Batson* challenge. To the extent that *State v. Allen, supra*, could be interpreted to require a common racial identity between the defendant and an excluded venireperson as a prerequisite for a challenge under *Batson*, it is disapproved.

The State articulated several reasons for striking the three African-American jurors. The State struck one juror because she was young and single, and the State was concerned that she might be attracted to Myers. This juror was also stricken because she lived in an area of high gang activity, but when she was questioned, she claimed to know nothing about gangs. The State found her response unbelievable. The second juror was stricken because she was unemployed, did not follow court instructions, and seemed to have a disagreeable attitude. The third juror was described as elderly and disabled. The State expressed concern about her paying attention during the trial and her ability to follow directions.

After hearing these explanations, the district court concluded that the State had race-neutral reasons for using its strikes and overruled Myers' motion. A trial court's determination of the adequacy of the State's "neutral explanation" of its peremptory challenges will not be reversed on appeal unless clearly erroneous. *State v. Lopez, supra*.

This court has affirmed various neutral reasons for striking a juror presented by the prosecution. See, e.g., *State v. Walton*, 227 Neb. 559, 418 N.W.2d 589 (1988) (juror stricken because she was unemployed, was single, lived at particular address, and did not have community ties); *State v. Alvarado*, 226 Neb. 195, 410 N.W.2d 118 (1987) (juror was stricken because she was young and defense witnesses were young and because of unavailability of juror background questionnaire for her). We conclude that the reasons articulated by the prosecution in this case are sufficiently neutral to avoid reversal on a "clearly erroneous" standard. Thus, this assignment of error is without merit.

TAPE-RECORDED STATEMENTS PLAYED TO JURY

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by such rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Sanchez*, 257 Neb. 291, 597 N.W.2d 361 (1999).

Prior to trial, Myers moved in limine to prevent the State from introducing tape-recorded statements involving Henley and Lynam. Myers argued that these recordings were inadmissible hearsay and irrelevant and that their probative value was outweighed by their prejudicial effect.

The State argues that Myers did not preserve his hearsay objection to the tapes. The State's claim is unpersuasive in light of the fact that the hearsay issue was argued at the hearing and that when the tapes were played to the jury, Myers renewed his earlier objection to the tapes.

 The State claims that the statements contained in the tapes are not hearsay because the statements prove that Myers, Henley, and Sheila Myers conspired to conceal Myers' involvement in the murder of Mainelli. Neb. Rev. Stat. § 27-801(4)(b)(v) (Reissue 1995) provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. In *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987), *abrogated on other grounds, State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990), we held that statements made by coconspirators could be admitted even when the conspiracy was not charged in the information.

However, before the " 'trier of facts may consider testimony under the coconspirator exception to the hearsay rule, a *prima facie* case establishing the existence of the conspiracy must be shown by independent evidence. . . .' " *Copple*, 224 Neb. at 693, 401 N.W.2d at 156.

The State asserts that the tapes contain statements made in furtherance of the conspiracy to cover up Mainelli's murder. However, our review of the record reveals that the conspiracy to cover up the murder can only be proved by the hearsay statements themselves. Thus, the State has failed to make a prima facie showing of the existence of the conspiracy between Myers, Lynam, and Henley separate and apart from the hearsay statements. Consequently, the statements contained within the tape recording cannot be considered "nonhearsay." The State advanced no other grounds for admitting this hearsay, and as such, the district court erred in admitting the tapes.

▉ In a jury trial of a criminal case, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Sanchez, supra.* Evidentiary error is harmless when improper admission of evidence did not materially influence the jury to reach a verdict adverse to substantial rights of the defendant. *State v. Hingst*, 251 Neb. 535, 557 N.W.2d 681 (1997). In determining whether error in admitting evidence was harmless, an appellate court bases its decision on the entire record in determining whether the evidence materially influenced the jury in a verdict adverse to the defendant. *State v. Chojolan*, 253 Neb. 591, 571 N.W.2d 621 (1997).

In *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified* 255 Neb. 889, 587 N.W.2d 673 (1999), we reasoned that any error in admitting a police investigator's hearsay testimony concerning statements made by an accomplice's wife was harmless when the statements pertain merely to a collateral matter or are cumulative. In the tapes, Sheila Myers called Henley to tell her that the police had towed Sheila Myers' van. Henley then called Lynam looking for Myers to tell him about the van. Henley later spoke to Myers and told him that Sheila Myers' van had been towed by the police.

The evidence about which Myers complains was admitted later in the trial when Sheila Myers testified that in May 1996, the police came to search and tow her van. She also stated that after her van was towed, she called Henley to ask what was going on. These are the same facts established by the tape-recorded statements. We, therefore, conclude beyond a reasonable doubt that Myers could not have been harmed by the admission of the tape-recorded statements and that this assignment of error is without merit.

### ADMISSION OF SANDERS' THREAT TO WILSON

Myers' next assignment of error pertains to the admission of hearsay testimony by Edward Wilson. The State called Edward Wilson, and he testified that he had attended a meeting with Myers at a hotel in Council Bluffs prior to trial. All those who were in the van with Myers on the night of Mainelli's murder were present in the hotel room. Edward Wilson testified that Tim Sanders told those present that if anyone said anything about the Mainelli murder to the police, "something [was] going to happen to them." Edward Wilson interpreted this as a threat that any person who spoke with the police would be harmed.

Myers' objection to this testimony as hearsay was overruled. We find no error in allowing this testimony, for the statement was made in furtherance of a conspiracy and thus qualified as nonhearsay. Prior to Edward Wilson's taking the stand, Ronnie Cross, a defense witness, also testified that Sanders, Myers, and all the men who were in the van on the night of Mainelli's murder congregated at a hotel in Council Bluffs. Cross testified that while at the hotel, Sanders informed the men that they were not to speak to the police regarding Mainelli's murder. Cross' testimony constitutes independent evidence which established the prima facie elements of a conspiracy to cover up Mainelli's murder. See *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987). Thus, the statement about which Edward Wilson subsequently testified was a statement made by Sanders in the furtherance of the conspiracy and therefore was admissible as nonhearsay.

However, even if we found that the evidence was erroneously admitted, Myers could not have been harmed by its admission. As already indicated, during the cross-examination of Cross, it

was established that both Myers and Sanders had made comments about people talking to the police about the murder. Cross testified that the men who were in the van with Myers on the night of Mainelli's murder had a meeting in Council Bluffs. At this meeting, Myers and Sanders threatened the men in some fashion such that they understood that if they spoke to the police they would be harmed. Therefore, Edward Wilson's testimony regarding what was said at the meeting in Council Bluffs was largely cumulative.

### SUFFICIENCY OF EVIDENCE

Myers claims there was insufficient evidence to sustain his convictions. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." 443 U.S. at 319.

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995).

At trial, the defense and the State stipulated that at all relevant times, Myers was a person who had previously been convicted of a felony. Edward Wilson testified that he was in the van driven by Myers the night Mainelli was killed. Myers drove to

the Blue Lake Manor Apartments, where Mainelli lived. Myers got out of the van, and Edward Wilson saw that he had on gloves. Myers went to the back of the van, and Edward Wilson heard a "clacking" noise, which he recognized as the sound of a bullet moving into a chamber. Myers then left the van and walked toward the apartment complex. He was gone for about 1 hour, and upon his return, he got in the van and took the passengers home.

Sam Edwards testified that as Myers dropped him off, Myers gave him a handgun and told him to "put it up" because the police were out and Myers had in-transit stickers on the van. Earlier, Edwards had seen the pistol on Myers' lap. Edwards subsequently retrieved the pistol and gave it to Edward Wilson, who stated the pistol had once belonged to his sister, Edwina Wilson. Edward Wilson testified that he recognized the gun because it had a unique color and a name written on it and that he thought the black handle was unusual. Edward Wilson sold the pistol because he suspected that it had been used in the murder of Mainelli. The pistol was the same caliber as two .22-caliber casings found beside Mainelli's body. Daniel Bredow, a firearm toolmarks examiner with the city of Omaha, testified that he compared the bullets found at the crime scene with bullets fired from the gun Myers gave Edwards. Bredow concluded that the bullets taken from the crime scene had been fired by the gun which could be traced to Myers.

Sanders testified that in the summer and early fall of 1995, Myers had said that Mainelli was going to testify against Charles Duncan, so she needed to have "her cap pulled back and to be shot." Sanders saw Myers with a small .22-caliber handgun in the summer of 1995. Edwina Wilson testified that in December 1996, after Mainelli's death, Myers had told her to tell the police he was with her at the time of the killing.

Viewing this evidence in a light most favorable to the State, we conclude the jury could have found beyond a reasonable doubt that the State had proved the essential elements of the crimes of first degree murder, use of a deadly weapon in the commission of a felony, and possession of a deadly weapon by a felon. This assignment of error is without merit.

## Jury Instruction No. 6

Myers argues that the district court erred in submitting instruction No. 6 to the jury because it was a step instruction prohibited by *Beck v. Alabama*, 447 U.S. 625, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980). Instruction No. 6 provided in relevant part:

> If you find from the evidence beyond a reasonable doubt that each of the foregoing material elements is true, it is your duty to find the defendant guilty of the crime of murder in the first degree.
>
> On the other hand, if you find that the State has failed to prove beyond a reasonable doubt any one or more of the foregoing material elements, or you are unable to agree on whether the State has proved each of the foregoing material elements beyond a reasonable doubt, then you must consider the lesser included offense of second degree murder.

The jury was further instructed that if it was unable to find Myers guilty of second degree murder, it was to consider the lesser-included offense of manslaughter. If the jury found that manslaughter had not been proved beyond a reasonable doubt, it was to find Myers not guilty.

An instruction conference was held before the jury was instructed. Myers did not object to instruction No. 6 at that time or at any time prior to the reading of the instruction. Failure to timely object to jury instructions prohibits a party from contending on appeal that the instructions were erroneous. *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981). Myers waived any error regarding jury instruction No. 6.

> "[I]t is the duty of the trial court, without any request to do so, to instruct the jury on the issues presented by the pleadings and supported by the evidence. . . .
>
> "In applying that principle we have established that the failure to object to instructions after they have been submitted to counsel for review or to offer more specific instructions if counsel feels the court-tendered instructions are not sufficiently specific will preclude raising an objection on appeal, unless there is a plain error indicative of a probable miscarriage of justice."

*Ellis & Guy Advg. v. Cohen*, 219 Neb. 340, 342-43, 363 N.W.2d 180, 182 (1985), quoting *McCauley v. Briggs*, 218 Neb. 403, 355 N.W.2d 508 (1984). Step instructions which require consideration of the most serious crime charged before consideration of lesser-included offenses are not erroneous. *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998). Therefore, there was no plain error in reading this instruction, and this assignment of error is without merit.

## CONCLUSION

Having reviewed all of Myers' assignments of error and finding them to be without merit, we affirm his convictions for first degree murder, use of a deadly weapon in the commission of a felony, and possession of a deadly weapon by a felon. We must, however, address the sentences imposed.

The sentence imposed as to count I is affirmed. However, during sentencing, the State brought it to the district court's attention that Myers had been adjudicated as being a habitual criminal on January 20, 1998. Thus, Myers' status as a habitual criminal affected the sentences imposed as to counts II and III.

Neb. Rev. Stat. § 29-2221 (Reissue 1995) provides for a hearing to be conducted to ascertain whether a defendant qualifies as a habitual criminal. Section 29-2221(2) states that "[a]t the hearing, if the court finds from the evidence submitted that the accused has been convicted two or more times of felonies and sentences imposed . . . the court shall sentence such person so convicted as a habitual criminal."

We find no evidence in the record that the district court conducted a hearing on January 20, 1998, as claimed by the State. The only indication that the district court considered Myers to be a habitual criminal is a trial docket sheet entry dated January 15, which states that "[the] Court finds and adjudges defendant to be a habitual criminal as charged in Count IV of [the] Amended Information."

We cannot tell from the record what the district court relied on when it adjudged Myers to be a habitual criminal. We are concerned that the district court's conclusion that Myers was a habitual criminal was based upon the convictions which we reversed in *State v. Myers, ante* p. 272, 603 N.W.2d 390 (1999).

Thus, we reverse the district court's finding that Myers is a habitual criminal, and we vacate the sentences imposed on counts II and III. The cause is remanded for a determination of whether Myers is a habitual criminal and for the imposition of new sentences on counts II and III. All other aspects of the judgment are affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.